

P.O.Box 514387
Los Angeles, CA 90051-4387
(800) 777-4001
*fax* (866) 577-7205
NMLS # 35953

August 13, 2015


Doucet & Associates Co, LPA
C/o Gregory A. Wetzel
700 Stonehenge Parkway
Second Floor
Dublin, OH  43017


Loan Number:
Customer Name:      Scott Bucy
Property Address:     2144 Tall Timbers Ct.
                      Columbus, OH  43228


Dear Gregory A. Wetzel:

This letter is in response to correspondence received July 20, 2015, addressed to PennyMac Loan Services, LLC ("PennyMac"), regarding the above referenced loan. Although your letter purports to serve as a "qualified written request," it is missing information that is essential to qualified written requests made under 12 U.S.C. §2605(e) ("QWR").

As you may be aware, a QWR under 12 U.S.C. §2605(e)(1)(B) is a written correspondence which includes a statement of specific reasons why you believe the account is in error and which provides sufficient detail to allow the servicer of the loan to review the account to determine whether there were errors made in connection with the account, and to either make appropriate corrections where errors were made or to explain to you why the servicer believes the account is accurate.

After receiving your letter requesting information on your loan, I reviewed your clients account and confirmed the servicing of the loan was transferred from Mortgage Services III, LLC to PennyMac Loan Services, LLC effective August 29, 2013.  At the time of transfer, your loan was current.  Your prior servicer would no longer accept payments, following the effective date listed above and all subsequent payments would need to be sent directly to PennyMac.

A thorough review of the information provided by the previous servicer confirmed the transferred due date was accurate. The transfer of servicing does not affect any other terms or conditions of the mortgage documents, other than terms directly related to the servicing of your client's loan.  As of the date of this letter, the loan is currently due for the August 2015, payment.

Please find the enclosed document copies: Note, Open-End Mortgage/Deed of Trust, Good Faith Estimate, Notice of Right to Cancel, Welcome Letter, Truth in Lending, as well as the HUD-1, Payoff Statement, and a Customer Account Activity Statement since PennyMac has been servicing the loan. Please note that this statement provides pertinent information on payments received, tax and insurance payments disbursed from the escrow account, as well as late charges assessed and paid.

Exhibit B

The owner/investor for the above referenced loan is Government National Mortgage Association, whose address is 451 7th Street, SW #B-133 Washington, DC  20410.  However, at their request all loan inquiries should be directed to the current loan servicer, PennyMac Loan Services, LLC.  Our contact information is as follows:

| Payment Address | Correspondence Address |
|---|---|
| P.O. Box 30597 | P.O. Box 514387 |
| Los Angeles, CA 90051 | Los Angeles, CA  90051 |

Fax # 866-577-7205

In accordance with your request I have sent a copy of the Payoff Demand directly to the borrower at the mailing address on file. I have also enclosed a copy for your review. Please understand that PennyMac is unable to provide reinstatement figures for this loan as it is current.

In providing the above response, PennyMac is not limiting or waiving any rights or remedies it may now or hereafter have, whether arising under the loan documents, at law or in equity, all of which rights and remedies are expressly reserved.

Sincerely,

*Nikia M. Gray*

Nikia M. Gray
Research Department
PennyMac Loan Services, LLC

Enclosures

Scott Bucy
Page 3

In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 et seq., debt collectors are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to:(i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass. AS REQUIRED BY NEW YORK STATE LAW, if a creditor or debt collector receives a money judgment against you in court, state and federal laws prevent the following types of income from being taken to pay the debt: 1) Supplemental security income, (SSI); 2) Social security; 3) Public assistance (welfare); 4) Spousal support, maintenance {alimony) or child support; 5) Unemployment benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10) Federal student loans, federal student grants, and federal work study funds;11) and Ninety percent of your wages or salary earned in the last sixty days.

*This is an attempt by a debt collector to collect a debt and any information obtained will be used for that purpose. However, if your account is subject to pending bankruptcy proceedings or if you have received a discharge in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt against you personally.*

**Licensing Information**

Equal Housing Opportunity © 2008-2015 PennyMac Loan Services, LLC, 6101 Condor Drive, Suite 200, Moorpark, CA 93021, 818-224-7442. NMLS ID # 35953 (www.nmlsconsumeraccess.org). Trade/service marks are the property of PennyMac Loan Services, LLC and/or its subsidiaries or affiliates.
Arizona Mortgage Banker License # 0911088. Licensed by the Department of Business Oversight under the California Residential Mortgage Lending Act. Colorado: Regulated by the Division of Real Estate. Colorado office: 700 17th St, Suite 200, Denver, CO 80202, (866) 436-4766. Georgia Residential Mortgage Licensee #33027. Illinois Residential Mortgage Licensee # MB.6760595. Massachusetts Mortgage Lender License # ML35953. Minnesota: This is not an offer to enter into an agreement and an offer may only be made pursuant to Minn. Stat. §47.206 (3) & (4). Licensed by the Mississippi Department of Banking and Consumer Finance. Licensed by the New Hampshire Banking Department. Licensed by the N.J. Department of Banking and Insurance. North Carolina Permit No. 104753. Ohio Mortgage Broker Act Mortgage Banker Exemption # MBMB.850062.000. Rhode Island Lender License # 20092600LL. Washington Consumer Loan License # CL-35953. For a complete listing of state licenses and important notices, please visit www.pennymacusa.com/state-licenses. Loans not available in New York. Some products may not be available in all states. Information, rates and pricing are subject to change without prior notice at the sole discretion of PennyMac Loan Services, LLC. All loan programs subject to borrowers meeting appropriate underwriting conditions. This is not a commitment to lend. Other restrictions apply. All rights reserved. (06-2015)

MIN: █████████████

# NOTE

**Multistate**

| FHA Case No. |
|---|
| ████████████ |

---

**November 05, 2008**
[Date]

**2144 TALL TIMBERS CT, Columbus, OHIO 43228**
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **United Wholesale Mortgage**

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of One **Hundred Eighty Six Thousand Five Hundred Thirty Eight and 00/100**

Dollars (U.S. $    **186,538.00**    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Six and One Half** percent (   **6.500**  %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **December 1**   , **2008**   . Any principal and interest remaining on the first day of **November 2038**   , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at **P.O. BOX 970 Birmingham, MICHIGAN 48012**   or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $   **1,179.05**  . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

1350816904

VMP® -1R (0210).02   FHA Multistate Fixed Rate Note - 10/95
VMP Mortgage Solutions (800)521-7291
Page 1 of 2    Initials: _____

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four                     percent (             4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

| | |
|---|---|
| _Scott Bucy_ (Seal) | _____ (Seal) |
| SCOTT BUCY                    -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| _____ (Seal) | PAY TO THE ORDER OF _____ (Seal) |
| -Borrower | WITHOUT RECOURSE UNITED WHOLESALE MORTGAGE -Borrower |
| _____ (Seal) | _THERESA MARTINEZ_ (Seal) |
| -Borrower | THERESA MARTINEZ, DIRECTOR OF SERVICING -Borrower |

-1R (0210).02                                    Page 2 of 2

COPY CERTIFICATION
This is a true & confirmed copy of the original document
By _____ Land & Title Agency, Inc.

After Recording Return To:
**MORTGAGE SERVICES III, LLC**
**502 N HERSHEY RD**
**BLOOMINGTON, IL 61704**
**ATTN: FINAL DOCS**

_____ [Space Above This Line For Recording Data]
## OPEN-END MORTGAGE

FHA Case No.

BUCY
Loan #:
MIN:

PIN: 560-20100-00
Case #:

*Diane DCB*

THIS MORTGAGE ("Security Instrument") is given on AUGUST 13, 2013. The mortgagor is **SCOTT BUCY MARRIED TO DIANNE BUCY** whose address is **2144 TALL TIMBERS COURT, COLUMBUS, OH 43228** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of PO Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **MORTGAGE SERVICES III, LLC** ("Lender") is organized and existing under the laws of **ILLINOIS**, and has an address of **502 NORTH HERSHEY RD., BLOOMINGTON, IL 61704**. Borrower owes Lender the principal sum of **ONE HUNDRED SEVENTY-SEVEN THOUSAND ONE HUNDRED FORTY-NINE AND 00/100** Dollars (U.S. $177,149.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **SEPTEMBER 1, 2043**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in FRANKLIN County, Ohio:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

**FHA Ohio Open-End Mortgage - 06/13**
**☜ 397.21**                          Page 1 of 10

which has the address of **2144 TALL TIMBERS COURT, COLUMBUS, OH 43228** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

## UNIFORM COVENANTS:

1. **Payment of Principal, Interest and Late Charge**
   Borrower shall promptly pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges**
   Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for

   (a) taxes and special assessments levied or to be levied against the Property,

   (b) leasehold payments or ground rents on the Property, and

   (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either

   (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or

   (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Sec. 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time (RESPA), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrowers account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments**
   All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

   * First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

   * Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

   * Third, to interest due under the Note;

   * Fourth, to amortization of the principal of the Note; and

   * Fifth, to late charges due under the Note.

4. **Fire, Flood, and Other Hazard Insurance**
   Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

   In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either

   (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any

FHA Ohio Open-End Mortgage - 06/13
👁 397.21                          Page 3 of 10

delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or

(b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds**
Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned property. Borrower shall also be in default if borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation**
The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property**
Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

FHA Ohio Open-End Mortgage - 06/13

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear Interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender;

(b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lenders opinion operate to prevent the enforcement of the lien; or

(c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees**

Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement**
Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:

(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding,

(ii) reinstatement will preclude foreclosure on different grounds in the future, or

(iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released: Forbearance by Lender Not a Waiver**
Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrowers successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers**
The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrowers covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not

**FHA Ohio Open-End Mortgage - 06/13**
397.21                    Page 6 of 10

execute the Note:

(a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument;

(b) is not personally obligated to pay the sums secured by this Security Instrument; and

(c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices**

Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability**

This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy**

Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances**

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents**

Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure**

If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. The Property shall be sold in the manner prescribed by applicable law, including a public sale, and Lender or its designee may purchase the Property at any sale.Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided under the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release**

Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Advances to Protect Security**

Pursuant to Ohio Rev. Code Ann. § 5301.232. Borrower and Lender intend for this Security Instrument to secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment

of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.

21. **Riders to This Security Instrument**

If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider ☐ Graduated Payment Rider
☐ Other [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_8/13/13_
- BORROWER - SCOTT BUCY - DATE -

_8-13-13_
DIANNE BUCY    DATE -

Diane
DCB

[Space Below This Line For Acknowledgment]

STATE OF OHIO

COUNTY OF _Franklin_

The foregoing instrument was acknowledged before me on this ___13th day of Aug. 2013__, by

_Scott Bucy and Dianne Bucy, Husband and wife_

_____

_____
Notary Public

Michael J. Bostrom Jr.
Notary Public, State of Ohio
My Commission Expires 08/19/2018

My Commission Expires: _____

This instrument was prepared by:
MICKEY SCHWARTZ
MORTGAGE SERVICES III, LLC
502 N. HERSHEY RD
BLOOMINGTON, IL 61704

FHA Ohio Open-End Mortgage - 06/13
397.21          Page 10 of 10

## EXHIBIT "A"

Situated in the State of Ohio, County of Franklin, and in the City of Columbus:

Being Lot Number Three Hundred Ninety-two (392), in GOLFVIEW WOODS SECTION 8. As the same is numbered and delineated upon the recorded plat thereof, of record in Plat Book 63, Page 14, Recorder's Office, Franklin County, Ohio.



# Good Faith Estimate (GFE)

| Name of Originator | Mortgage Services III, L.L.C. | | Borrower | Scott D Bucy |
|---|---|---|---|---|
| Originator Address | 502 N Hershey Road Bloomington, IL 61704 | | Property Address | 2144 Tall Timbers CT Columbus, OH 43228 County: Franklin |
| Originator Phone Number | 309-664-9100 | | | |
| Originator Email | kboger@msiloans.biz | | Date of GFE | 08/05/2013 |

**Purpose**

This GFE gives you an estimate of your settlement charges and loan terms if you are approved for this loan. For more information, see HUD's Special Information Booklet on settlement charges, your Truth-in-Lending Disclosures, and other consumer information at www.hud.gov/respa. If you decide you would like to proceed with this loan, contact us.

**Shopping for your loan**

Only you can shop for the best loan for you. Compare this GFE with other loan offers, so you can find the best loan. Use the shopping chart on page 3 to compare all the offers you receive.

**Important dates**

1. The interest rate for this GFE is available through [ 08/19/2013 ]. After this time, the interest rate, some of your loan Origination Charges, and the monthly payment shown below can change until you lock your interest rate.

2. This estimate for all other settlement charges is available through [ 08/16/2013 ].

3. After you lock your interest rate, you must go to settlement within [ 15 ] days (your rate lock period) to receive the locked interest rate.

4. You must lock the interest rate at least [ NA ] days before settlement.

**Summary of your loan**

| | | | |
|---|---|---|---|
| Your initial loan amount is | | $ | 180,018.00 |
| Your loan term is | | | 30 years |
| Your initial interest rate is | | | 4.750 % |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | | $ | 1,021.56 per month |
| Can your interest rate rise? | | ☑ No | ☐ Yes, it can rise to a maximum of %. The first change will be in |
| Even if you make payments on time, can your loan balance rise? | | ☑ No | ☐ Yes, it can rise to a maximum of $ |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and any mortgage insurance rise? | | ☑ No | ☐ Yes, the first increase can be in and the monthly amount owed can rise to $ . The maximum it can ever rise to is $ . |
| Does your loan have a prepayment penalty? | | ☑ No | ☐ Yes, your maximum prepayment penalty is $ . |
| Does your loan have a balloon payment? | | ☑ No | ☐ Yes, you have a balloon payment of $ due in years. |

**Escrow account information**

Some lenders require an escrow account to hold funds for paying property taxes or other property-related charges in addition to your monthly amount owed of $ [ 1,021.56 ].
Do we require you to have an escrow account for your loan?
☐ No, you do not have an escrow account. You must pay these charges directly when due.
☑ Yes, you have an escrow account. It may or may not cover all of these charges. Ask us.

**Summary of your settlement charges**

| | | |
|---|---|---|
| **A** | Your Adjusted Origination Charges (See page 2.) | $ -3,318.45 |
| **B** | Your Charges for All Other Settlement Services (See page 2.) | $ 3,777.45 |
| **A** + **B** | Total Estimated Settlement Charges | $ 459.00 |

Understanding
your estimated
settlement charges

## Your Adjusted Origination Charges

| | |
|---|---:|
| **1. Our origination charge**<br>This charge is for getting this loan for you. | 731.95 |
| **2. Your credit or charge (points) for the specific interest rate chosen**<br>☐ The credit or charge for the interest rate of [＿＿＿＿] % is included in<br>"Our origination charge." (See item 1 above.)<br>☑ You receive a credit of $ [ 4,050.40 ] for this interest rate of [ 4.750 ] %.<br>This credit **reduces** your settlement charges.<br>☐ You pay a charge of $ [＿＿＿＿] for this interest rate of [＿＿＿] %.<br>This charge (points) **increases** your total settlement charges.<br>The tradeoff table on page 3 shows that you can change your total settlement charges<br>by choosing a different interest rate for this loan. | - 4,050.40 |

| **A** | **Your Adjusted Origination Charges** | **$** | **-3,318.45** |
|---|---|---|---:|

## Your Charges for All Other Settlement Services

*Some of these charges
can change at settlement.
See the top of page 3 for
more information.*

**3. Required services that we select**
These charges are for services we require to complete your settlement.
We will choose the providers of these services.

| Service | Charge |
|---|---|
| Flood Certification | 11.00 |
| Up-Front Mortgage Insurance | 18.00 |
| Final Inspection | |
| Subordination Fee | |
| Condo Questionnaire Fee | |
| | |
| | |
| | |

| | | |
|---|---|---:|
| | | 29.00 |

| | |
|---|---:|
| **4. Title services and lender's title insurance**<br>This charge includes the services of a title or settlement agent, for example,<br>and title insurance to protect the lender, if required. | 1,492.80 |
| **5. Owner's title insurance**<br>You may purchase an owner's title insurance policy to protect your interest in the property. | |

**6. Required services that you can shop for**
These charges are for other services that are required to complete your settlement.
We can identify providers of these services or you can shop for them yourself.
Our estimates for providing these services are below.

| Service | Charge | Service | Charge |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | |
|---|---:|
| **7. Government recording charges**<br>These charges are for state and local fees to record your loan and title documents. | 186.00 |
| **8. Transfer taxes**<br>These charges are for state and local fees on mortgages and home sales. | |
| **9. Initial deposit for your escrow account**<br>This charge is held in an escrow account to pay future recurring charges<br>on your property and includes [X] all property taxes, [X] all insurance,<br>and ☐ other [＿＿＿＿＿＿＿＿＿] . | 1,178.24 |
| **10. Daily interest charges**<br>This charge is for the daily interest on your loan from the day of your settlement until the first<br>day of the next month or the first day of your normal mortgage payment cycle. This amount is<br>$ [ 23.4270 ] per day for [ 15 ] days (if your settlement is [ 08/15/2013 ] ). | 351.41 |

**11. Homeowner's insurance**
This charge is for the insurance you must buy for the property to protect from a loss,
such as fire.

| Policy | Charge |
|---|---|
| Hazard Insurance | 540.00 |
| | |
| | |

| | | |
|---|---|---:|
| | | 540.00 |

| **B** | **Your Charges for All Other Settlement Services** | **$** | **3,777.45** |
|---|---|---|---:|

| **A** + **B** | **Total Estimated Settlement Charges** | **$** | **459.00** |
|---|---|---|---:|

**Good Faith Estimate (HUD-GFE) 2**

Calyx Form - GFE2010_2.frm (12/09), Rev. (9/10)

# Instructions

**Understanding which charges can change at settlement**

This GFE estimates your settlement charges. At your settlement, you will receive a HUD-1, a form that lists your actual costs. Compare the charges on the HUD-1 with the charges on this GFE. Charges can change if you select your own provider and do not use the companies we identify. (See below for details.)

| These charges **cannot increase** at settlement: | The total of these charges **can increase up to 10%** at settlement: | These charges **can change** at settlement: |
|---|---|---|
| • Our origination charge<br>• Your credit or charge (points) for the specific interest rate chosen *(after you lock in your interest rate)*<br>• Your adjusted origination charges *(after you lock in your interest rate)*<br>• Transfer taxes | • Required services that we select<br>• Title services and lender's title insurance *(if we select them or you use companies we identify)*<br>• Owner's title insurance *(if you use companies we identify)*<br>• Required services that you can shop for *(if you use companies we identify)*<br>• Government recording charges | • Required services that you can shop for *(if you do not use companies we identify)*<br>• Title services and lender's title insurance *(if you do not use companies we identify)*<br>• Owner's title insurance *(if you do not use companies we identify)*<br>• Initial deposit for your escrow account<br>• Daily interest charges<br>• Homeowner's insurance |

**Using the tradeoff table**

In this GFE, we offered you this loan with a particular interest rate and estimated settlement charges. However:
• If you want to choose this same loan with **lower settlement charges**, then you will have a **higher interest rate**.
• If you want to choose this same loan with a **lower interest rate**, then you will have **higher settlement charges**.

If you would like to choose an available option, you must ask us for a new GFE.

*Loan originators have the option to complete this table. Please ask for additional information if the table is not completed.*

|  | The loan in this GFE | The same loan with lower settlement charges | The same loan with a lower interest rate |
|---|---|---|---|
| Your initial loan amount | $ 180,018.00 | $ | $ |
| Your initial interest rate [1] | 4.750 % | % | % |
| Your initial monthly amount owed | $ 1,021.56 | $ | $ |
| Change in the monthly amount owed from this GFE | No change | You will pay $ **more** every month | You will pay $ **less** every month |
| Change in the amount you will pay at settlement with this interest rate | No change | Your settlement charges will be **reduced** by $ | Your settlement charges will **increase** by $ |
| How much your total estimated settlement charges will be | $ 459.00 | $ | $ |

[1] *For an adjustable rate loan, the comparisons above are for the initial interest rate before adjustments are made.*

**Using the shopping chart**

Use this chart to compare GFEs from different loan originators. Fill in the information by using a different column for each GFE you receive. By comparing loan offers, you can shop for the best loan.

|  | This loan | Loan 2 | Loan 3 | Loan 4 |
|---|---|---|---|---|
| Loan originator name | Mortgage Services III, L.L.C. | | | |
| Initial loan amount | $ 180,018.00 | | | |
| Loan term | 30 years | | | |
| Initial interest rate | 4.750 % | | | |
| Initial monthly amount owed | $ 1,021.56 | | | |
| Rate lock period | 15 days | | | |
| Can interest rate rise? | NO | | | |
| Can loan balance rise? | NO | | | |
| Can monthly amount owed rise? | NO | | | |
| Prepayment penalty? | NO | | | |
| Balloon payment? | NO | | | |
| **Total Estimated Settlement Charges** | $ 459.00 | | | |

**If your loan is sold in the future**

Some lenders may sell your loan after settlement. Any fees lenders receive in the future cannot change the loan you receive or the charges you paid at settlement.

Good Faith Estimate (HUD-GFE) 3

# NOTICE OF RIGHT TO CANCEL

Borrower(s): **SCOTT BUCY**

Property Address: **2144 TALL TIMBERS COURT, COLUMBUS, OH 43228**



BUCY
Loan #:
MIN:
Cust #:

## YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE (3) BUSINESS DAYS from whichever of the following events occurs last:

(1)  the date of the transaction, which is **AUGUST 13, 2013**; or
(2)  the date you received your Truth-in-Lending disclosures; or
(3)  the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled; and we must return to you any money or property you have given to us or to anyone else in connection within this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at:

    **MORTGAGE SERVICES III, LLC**
    **502 NORTH HERSHEY RD.**
    **BLOOMINGTON, IL 61704**

You may use any written statement that is signed and dated by you and states your intention to cancel or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights. If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of **AUGUST 16, 2013** (or MIDNIGHT of the THIRD BUSINESS DAY* following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____    Date: _____

## RECEIPT OF NOTICE OF RIGHT TO CANCEL

Each of the undersigned have now received two Notice of Right to Cancel forms. The above real estate loan cannot be funded until THREE (3) BUSINESS DAYS* have elapsed since the date of this acknowledgment of receipt of the Notice of Right to Cancel.

*Business days include all days except Sundays, New Year's Day, Martin Luther King Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, and Christmas Day.

Date Notice of Right to Cancel form received: **AUGUST 13, 2013**.

_Jutt Bucy_    _8/13/13_
— BORROWER — **SCOTT BUCY** — DATE —



**PennyMac Loan Services, LLC**
P.O. Box 514387
Los Angeles CA 90051-4387

September 04, 2013

4-779-00133-0001517-001-01-000-010-000-000
SCOTT BUCY
2144 TALL TIMBERS CT
COLUMBUS OH 43228

**Good News!**
Your loan is now serviced by PennyMac

## We're Your Mortgage Company

**Loan Number:** [REDACTED]
**Property Address:** 2144 TALL TIMBERS CT
COLUMBUS OH 43228

Dear SCOTT BUCY,

**Welcome to PennyMac!**
We are pleased to advise that the servicing of your mortgage loan has transferred from MORTGAGE SERVICES III, LLC to PennyMac Loan Services, LLC ("PennyMac") effective August 29, 2013. The transfer of servicing does not affect any other term or conditions of the mortgage documents, other than terms directly related to the servicing of your loan.

**Start sending your payments to PennyMac.**
Your first payment is due to PennyMac on October 01, 2013. Ways to make your payment are outlined on the following page or you may use the remittance coupon provided below.

If you have any questions regarding this servicing transfer, please contact one of our Loan Specialists Toll-free at (866) 601-3518.

It is our pleasure to welcome you as a new customer!

Sincerely,

PennyMac Loan Services, LLC

**Contact Us:**
Toll Free (866) 601-3518
Se Habla Espanol

**Hours:**
Mon-Fri: 7 am - 6 pm (PST)
Sat: 7 am - 11 am (PST)

**Secure Website:**
www.PennyMacUSA.com

Welcome CLG1

779-4000-0213F

Equal Housing Lender. ©2008-2013 PennyMac Loan Services, LLC, 6101 Condor Drive, Moorpark CA 93021, (818)224-7442. Trade/service marks are the property of PennyMac Loan Services, LLC and/or its subsidiaries. Licensed by the Department of Corporations under the California Residential Mortgage Lending Act; Illinois Residential Mortgage Licensee #MB.6760595. Minnesota: This is not an offer to enter into an agreement. Any such offer may only be made pursuant to Minn. Stat. §47.206 (3) & (4). Washington Consumer Loan License #520-CL-48635. Some products may not be available in all states. Information, rates and pricing are subject to change. This is an attempt to collect a debt and any information obtained will be used for that purposes. See enclosed important information.

▲Please detach and return with your payment ▲



Loan Number: [REDACTED]

**Payment Due:** $1,419.31

**Payment Due Date:** **October 01, 2013**

PENNYMAC LOAN SERVICES, LLC
PO BOX 660929
DALLAS, TX 75266-0929

Current Payment Due:
Additional Principal:
Additional Escrow:
Other:
**Total Amount Enclosed:**

SCOTT BUCY
2144 TALL TIMBERS CT
COLUMBUS OH 43228

800072093810014193100001419318



# Quick Start Guide to Managing Your PennyMac Loan

## How to Contact Us

**Customer Service:** Our Customer Service Representatives are available 7:00 am to 6:00 pm Monday through Friday, and 7:00 am to 11:00 am Saturday (Pacific Time). Our toll-free number is (866) 601-3518. Please have our loan number available.

**Secure Messaging Online:** Go to the "My Account" tab of PennyMacUSA.com, click on "Loan Servicing Center" and select the option for Secure Messaging.

**Correspondence:** Questions about your loan, Qualified Written Requests, address changes, and other correspondence may be mailed to: PennyMac Loan Services LLC, Attn: Correspondence Unit, P.O. Box 514387, Los Angeles CA 90051-4387

## How to Make a Payment

**By Mail:** Mail your payment to PennyMac at:

| **Standard Payment Address:** | **Overnight Address:** |
|---|---|
| P.O. Box 30597 | 6101 Condor Drive |
| Los Angeles, CA 90030-0597 | Moorpark, CA 93021 |

**By Phone:** Use our automated phone service by calling (866) 601-3518

**Online:** Access this option by going to "My Account" tab at www.PennyMacUSA.com. After you register/log in, click on "Loan Servicing Center", followed by "One-Time Draft" and follow the instructions.

**Automatic Drafts:** If you were previously enrolled in automatic payment drafts ("ACH") with your previous servicer, you will need to re-enroll with PennyMac. See the enclosed ACH application.

## Tax and Insurance Information

If an escrow or impound account was set up for your loan for the payment of property taxes and hazard insurance, the balance in that account has been transferred to us from your prior servicer.

You must notify your insurance carrier that your loan has transferred to PennyMac and provide the following address for billing purposes:

**PennyMac Loan Services, LLC,
its Successor and/or assigns
P.O. Box 29247
Phoenix, AZ 85038**

## Optional Insurance

The transfer of servicing rights may affect the terms of or the continued availability of any optional insurance coverage or other membership products.

If your monthly payment included the collection of optional insurance premiums or membership fees, these services will not continue. You should contact the provider of the optional insurance of membership product directly to determine your continuation privileges, if applicable.

### ☎ Questions about the transfer? Call us toll-free at (866) 601-3518

We are required to provide the following information under federal law. This notification is a requirement of Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605).

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer. The new servicer must also send you a similar notice no later than 15 days after the effective date. You should also be aware of the following information, which is set out in more detail in Section 6 of RESPA (U.S.C. 2605): During the 60-day period following the effective date of the transfer of loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights whether or not your loan servicing is being transferred. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement within 20 business days of the receipt of your request. A "qualified written request" is written correspondence other than notice on a coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reason for the request. If you want to send a qualified written request regarding the servicing of your loan, it must be sent to this address: PennyMac Loan Services LLC, Attn: Correspondence Unit P.O. Box 514387, Los Angeles CA 90051-4387

Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During the 60 business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. Section 6 of RESPA also provides for damages and costs for individuals or classes or individuals in circumstances where servicers are shown to have violated the requirements of that Section.



**PennyMac®**
PennyMac Loan Services, LLC

**Privacy Notice**
Your Privacy is Important

The main goal of PennyMac* is to help you maintain and protect the ownership in your home. This notice explains how we protect and use your personal information in a safe, secure and responsible manner. What you need to know in brief:

- **We do not sell customer information to third parties.**
- **We offer you products or services at a lower cost or with greater convenience by sharing limited information within PennyMac and with carefully selected business partners.**
- **We do not share customer information with affiliates except to provide existing services to you.**

**How We Obtain and Use Information**
To service and manage your loan, comply with government regulations, improve our products and services, and better understand your financial situation and needs, we collect and maintain customer and former customer data. We collect information:

- you provide us on applications, other forms, or verbally over the phone (such as your Social Security, account and phone numbers, assets, income and employment history);
- about your transactions with us (such as your loan balance, payment history and other account information);
- about your credit history from a credit reporting agency and
- About you or your property from business partners and service providers (such as a property appraisal or purchase contracts).

We only disclose this data to third parties that assist us in providing vital services to you (such as credit reporting agencies, regulators, data processing providers, loan investors, and monthly statement vendors). These service providers are contractually bound to keep the information confidential and not use it for any other purpose.

**Your Options Under This Notice**
You may limit how we share your personal information. This is called a right to "opt out". You have two options to consider:
1. Continue receiving product and services offers without taking any action
2. Opt out of information sharing. If you want to opt out, please call us toll-free at (866) 601-3518. Please have your account and billing information available when you call.

If you opt out we will continue to share non-public personal information with our service providers (such as monthly statement vendors), and with third parties as required or permitted by law (such as credit reporting agencies).

**Notice to CA Residents:** We will provide a separate short form notice describing the rights of California residents to opt out under California law, including rights to opt-out of affiliate sharing. We will only share non-public personal information as required or permitted by law.

**Notice to ND Residents:** We will only share information with our service providers and with third parties as required or permitted by law. We may also disclose your non-public personal information with your written consent.

**Notice to VT Residents:** We will not share non-public personal information with anyone except our service providers and third parties as required or permitted by law. We will share transaction and experience information (such as your loan balance and payment history) within the PennyMac family of companies.

**How We Protect Your Information**
We strive to safeguard your data. We do this by:
- setting policies and procedures for carefully handling your information;
- limiting employee access to sensitive information;
- protecting against unauthorized access to customer data using data encryption, authentication, and virus detection technology;
- requiring service providers who do business with us to comply with privacy laws;
- auditing company security practices;
- conducting background checks on all employees and providing privacy guidelines after hiring.

* This privacy notice applies to PennyMac Loan Services, LLC; PennyMac Capital Management, LLC; PNMAC Mortgage Opportunity Fund Investors, LLC; Private National Mortgage Acceptance Company, LLC; and PNMAC Mortgage Co., LLC.

Questions about your privacy?

☎ Call us at **(866) 601-3518 or**
✍ Email us through Secure Messaging option at **www.PennyMacUSA.com**

**Effective Date: September 5, 2008**



**Automated Clearing House (ACH) Program Application**

Thank you for expressing interest in PennyMac's Automatic Clearing House debit (ACH) program. ACH is a convenient, economical and efficient way for you to make your monthly mortgage payment. Please follow the steps within this application to start the automatic withdrawal of your payment.

❶    Complete and sign the application

Debit your account up to 15 delay days after your due date.

Loan Number � ▬▬▬

Debit my account _____ after my due date.

Name _____

Bank Name _____

Property Address _____

Routing Number _____

*See sample check below for locations of these numbers*

_____

Account Number _____

Account Type ☐ Checking        ☐ Savings

*(optional)* I would like an additional $_____ debited each month and applied to my principal balance.

By submitting this application you authorize PennyMac Loan Services, LLC to debit the account specified above for the amount of your scheduled monthly mortgage payment due. In the event that your monthly payment increases due to increases in your escrow or interest rate (if applicable), you authorize us to increase the withdrawal amount by that amount.

Signature(s) _____    _____
*All bank account holders must sign this application*

❷    Attach a voided check or savings account deposit slip from your bank

**Staple Voided Check HERE**

| | |
|---|---|
| **YOUR NAME**  Your Address  Your City, State Zip | **3456** |

Pay to the Order of _____    $ ▭

_____ Dollars

**YOUR BANK**
Bank City, State Zip

For _____

⑈123456789⑈  123456789⑈0⑈  3456

VOID

Bank Routing Number is 9 digits and is between these symbols ⑈

Your account number is 10 or more digits and ends with this symbol ⑈

❸    Send us this completed form

Fax Toll Free (866) 577-7205

Mail to PennyMac Loan Services, ACH Signup, P.O. Box 514387, Los Angeles, CA 90051-4387

You will receive a confirmation letter of successful enrollment in the ACH program. The confirmation will identify the date of your first scheduled ACH draft payment. If your loan is not current at the time this application is received, we will not be able to process this application until such time that your loan is brought current.



# AUTOMATED CLEARING HOUSE (ACH) PROGRAM
## Frequently Asked Questions

**How does the program work?**
Once you sign up with ACH, we will automatically deduct your mortgage payment from your designated checking or savings account each month. We will send notification to your bank to transfer the exact amount of your mortgage payment on your draft date, from your checking or savings account to us. A record of the transaction will be included each month on your bank statement and your monthly billing statement from us.

**Why should I sign up for ACH debit?**
Convenience, security, and peace of mind. You no longer have to write a check each month for your mortgage payment - no checks, no stamps, no envelopes, and no trips to the mail box. You'll also have peace of mind knowing that your monthly mortgage payment was made automatically, on time, and through a secure method.

**Does ACH cost anything?**
There is no charge to setup or use our ACH service.

**Can I still make additional principal payments or escrow deposits?**
Yes! If you want to make additional payments, either designate on the application the amount of the principal payment to be withdrawn in addition to your monthly payment, or simply mail a check for the desired amount the first week of the month. Additional escrow can be mailed anytime. Please include your mortgage account number and the words "additional principal" or "escrow deposit" on the face of your check.

**How can I begin this convenient service?**
It's very simple. Just fill out the application and mail or fax it to us. Please enclose a voided blank check or savings acct deposit slip with the authorization agreement. Write "void" across the face of your check or a savings deposit slip from a current savings account. The authorization agreement and your voided check or deposit slip will give us the accurate information we need to begin your ACH service. We will notify you in writing which month's payment will begin your ACH service. Please continue to make your normal mortgage payments until you receive a confirmation letter from PennyMac.

**Can I cancel the ACH service?**
The ACH service may be canceled at any time by sending us a written notice at least 15 days prior to your next due date. Alternatively, you may cancel the ACH service by calling (866) 601-3518 and speaking to a Loan Specialist at least 3 business days prior to your scheduled payment date.

**What happens if I change my bank?**
If you move your checking or savings account from your current bank to another one, you need to complete a new authorization agreement and mail it to us along with a voided blank check or savings account deposit slip at least 15 days before your scheduled draft date. You can request an additional form by calling our Customer Service Department at (866) 601-3518 or by downloading the form at PennyMacUSA.com/forms. Please allow 2 to 3 weeks for the change to take place. We will notify you when the ACH service will begin on your new account.

**What happens if I file for bankruptcy?**
Upon PennyMac receiving notice that you or your account are subject to pending bankruptcy proceedings, or that you have received a discharge in bankruptcy, your ACH service will immediately be canceled due to the automatic stay or discharge injunction imposed by federal bankruptcy law. We will notify you in writing of such cancellation. However, if your account is paid current at the time PennyMac receives notice of the bankruptcy proceedings or discharge, you can reapply for the ACH program. A new application is necessary to ensure you consent in writing to the automatic deductions from your bank account while under protection of federal bankruptcy law. If at the time you receive this application you or your account are subject to active bankruptcy proceedings or previously have received a discharge, this application is provided for informational purposes only and is not an attempt to collect a debt against you personally.

**Do you have any more questions?**
If you have any questions, please call us toll free at (866) 601-3518. One of our Loan Specialists will be happy to answer your questions or provide you with more information.

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

Date: AUGUST 13, 2013
Lender: MORTGAGE SERVICES III, LLC
Borrower(s): SCOTT BUCY
Property Address: 2144 TALL TIMBERS COURT, COLUMBUS, OH 43228

BUCY
Loan #:
MIN:

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 5.415% | $176,092.79 | $174,588.69 | $350,681.48 |

You have the right to receive at this time an Itemization of the Amount Financed.
☒ I want an Itemization.      ☐ I do not want an Itemization.

## INTEREST RATE AND PAYMENT SUMMARY

| | Rate & Monthly Payment |
|---|---|
| Interest Rate | 4.750% |
| Principal + Interest Payment | $924.09 |
| Est. Taxes + Insurance (Escrow)<br>• Includes Mortgage Insurance | $495.22 |
| Total Est. Monthly Payment | $1,419.31 |

There is no guarantee that you will be able to able to refinance to lower your rate and payments.

☐ This loan has a demand feature

☐ Variable Rate: This loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.
☒ Variable Rate Not Applicable

**Security:**   You are giving a security interest in the property located at 2144 TALL TIMBERS COURT, COLUMBUS, OH 43228.

**Late Charge:**   If a payment is not received by the end of 15 days after the date it is due, you will be charged:
☒ 4.000% of the overdue payment
☐ _____% of the overdue payment of principal and interest (or interest if your payment consists only of interest)
☐ not less than U.S. $N/A and not more than U.S. $N/A

**Filing Fees/Recording Fees:** SEE HUD-1 SETTLEMENT STATEMENT.

**Prepayment:**   If you pay off this loan early, you   ☐ may   ☒ will not   have to pay a penalty, and you   ☒ may   ☐ will not   be entitled to a refund of part of the finance charge.   ☒ If you pay off an FHA insured loan, on a date other than the regular installment date, you may be assessed interest charges until the end of the month.

**Assumption:**   Someone buying your home
☐ will not be allowed to assume the remainder of this mortgage on the original terms.
☒ may, subject to conditions, be allowed to assume the remainder of this mortgage on the original terms.

**Required Deposit:**   If lender requires you to maintain a deposit as a condition of the loan, the annual percentage rate does not reflect the effect of the required deposit.

**Property Insurance** is required to obtain credit. You may obtain property insurance from anyone you want who is reasonably acceptable to MORTGAGE SERVICES III, LLC.
☒ Property Insurance is not available through MORTGAGE SERVICES III, LLC.
☐ If you get the insurance from _____. you will pay $_____ for a term of ____ months.

**CREDIT LIFE AND DISABILITY INSURANCE** are not required to obtain credit and will not be provided at the time of closing. You may be offered these plans after closing, but they are not in effect at this time. No such insurance will be in force until you have completed an application, the insurance company has issued the policy, and the effective date of that policy has been provided.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**YOU ARE NOT REQUIRED TO COMPLETE THIS AGREEMENT MERELY BECAUSE YOU HAVE RECEIVED THESE DISCLOSURES OR SIGNED A LOAN APPLICATION.**

I/we acknowledge receipt of a completed copy of this disclosure.

SIGNED AND DATED:

_Diane Bucy_        8-13-13
DIANE BUCY   - DATE -

_Diane_
       ↑ DCB

14363.109                         Page 1 of 1



# A. Settlement Statement (HUD-1)

OMB Approval No. 2502-0265

B. Type of Loan

| | | | | |
|---|---|---|---|---|
| 1. ☒ FHA  2. ☐ RHS  3. ☐ Conv. Unins. | 6. File Number:<br>GH-23056 | 7. Loan Number:<br>130801011 | 8. Mortgage Insurance Case Number:<br>413-8193255-703 | |
| 4. ☐ VA  5. ☐ Conv. Ins. | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agents are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower:<br>SCOTT BUCY<br>2144 Tall Timbers Court, Columbus, OH 43228 | E. Name & Address of Seller: | F. Name & Address of Lender:<br>MORTGAGE SERVICES III, LLC<br>502 N. HERSHEY ROAD, BLOOMINGTON,<br>IL 61704 |
|---|---|---|
| G. Property Location:<br>2144 Tall Timbers Court<br>Columbus, OH 43228 | H. Settlement Agent:<br>Landsel Title Agency, Inc.<br>961 N. Hamilton Road, Ste. 100, Gahanna OH 43230<br><br>Telephone: 614-337-1928 Fax: 614-337-9206 | I. Settlement Date: 08/13/2013<br>Disbursement Date: 08/19/2013 |
| | Place of Settlement:<br>961 N. Hamilton Road, Ste. 100, Gahanna OH 43230 | TitleExpress<br>Printed 08/16/2013 at 11:03 am<br>by MDH |

| J. Summary of Borrower's Transaction | | | K. Summary of Seller's Transaction | | |
|---|---|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | | **400. Gross Amount Due to Seller** | | |
| 101. Contract sales price | | | 401. Contract sales price | | |
| 102. Personal property | | | 402. Personal property | | |
| 103. Settlement charges to borrower (line 1400) | | 517.09 | 403. | | |
| 104. Payoff of first mortgage loan #166609502-8 to BANK | | 177,211.59 | 404. | | |
| OF AMERICA, N.A. | | | | | |
| 105. | | | 405. | | |
| **Adjustments for items paid by seller in advance** | | | **Adjustments for items paid by seller in advance** | | |
| 106. City/town taxes to | | | 406. City/town taxes to | | |
| 107. County taxes to | | | 407. County taxes to | | |
| 108. Assessments to | | | 408. Assessments to | | |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| **120. Gross Amount Due from Borrower** | | 177,728.68 | **420. Gross Amount Due to Seller** | | |
| **200. Amounts Paid by or in Behalf of Borrower** | | | **500. Reductions In Amount Due to Seller** | | |
| 201. Deposit or earnest money | | | 501. Excess deposit (see instructions) | | |
| 202. Principal amount of new loan(s) | | 177,149.00 | 502. Settlement charges to seller (line 1400) | | |
| 203. Existing loan(s) taken subject to | | | 503. Existing loan(s) taken subject to | | |
| 204. | | | 504. Payoff of first mortgage loan | | |
| 205. | | | 505. Payoff of second mortgage loan | | |
| 206. | | | 506. | | |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| **Adjustments for items unpaid by seller** | | | **Adjustments for items unpaid by seller** | | |
| 210. City/town taxes to | | | 510. City/town taxes to | | |
| 211. County taxes to | | | 511. County taxes to | | |
| 212. Assessments to | | | 512. Assessments to | | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| **220. Total Paid by/for Borrower** | | 177,149.00 | **520. Total Reduction Amount Due Seller** | | 0.00 |
| **300. Cash at Settlement from/to Borrower** | | | **600. Cash at Settlement to/from Seller** | | |
| 301. Gross amount due from borrower (line 120) | | 177,728.68 | 601. Gross amount due to seller (line 420) | | 0.00 |
| 302. Less amounts paid by/for borrower (line 220) | | 177,149.00 | 602. Less reductions in amount due seller (line 520) | | 0.00 |
| **303. Cash ☒ From ☐ To Borrower** | | 579.68 | **603. Cash ☒ To ☐ From Seller** | | 0.00 |

The Public Reporting Burden for this collection of information is estimated to 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

## L. Settlement Charges

| | | | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|---|---|
| **700.** | **Total Real Estate Broker Fees** | | | | | |
| | Division of commission (line 700) as follows: | | | | | |
| **701.** | $0.00 | | to | | | |
| **702.** | $0.00 | | to | | | |
| **703.** | Commission paid at settlement | | | | | |
| **800.** | **Items Payable In Connection with Loan** | | | | | |
| 801. | Our origination charge  (Includes Origination Point 0.000% or $0.00) | $731.95 | | (from GFE #1) | | |
| 802. | Your credit or charge (points) for the specific interest rate chosen | $-3,985.85 | | (from GFE #2) | | |
| 803. | Your adjusted origination charges | | | (from GFE A) | -3,253.90 | |
| 804. | Appraisal fee | to | | (from GFE #3) | | |
| 805. | Credit report | to | | (from GFE #3) | | |
| 806. | Tax service | to | | (from GFE #3) | | |
| 807. | Flood certification | to CORLOGIC | | (from GFE #3) | 11.00 | |
| 808. | | to | | | | |
| **900.** | **Items Required by Lender to be Paid in Advance** | | | | | |
| 901. | Daily interest charges from | from 08/19/2013 to 09/01/2013 @ $23.0500/day | | (from GFE #10) | 299.65 | |
| 902. | Mortgage insurance premium | for | months to HUD | (from GFE #3) | 17.71 | |
| 903. | Homeowner's Insurance | for | years to NATIONWIDE | (from GFE #11) | 788.00 | |
| 904. | | | months to | (from GFE #11) | | |
| **1000.** | **Reserves Deposited with Lender** | | | | | |
| 1001. | Initial deposit for your escrow account | | | (from GFE #9) | 1,304.98 | |
| 1002. | Homeowner's insurance | 2 months @ $ | 64.00/month  $128.00 | | | |
| 1003. | Mortgage insurance | months @ $ | 80.82/month  $ | | | |
| 1004. | Property taxes | 6 months @ $ | 350.60/month  $1,753.00 | | | |
| 1005. | | months @ $ | /month | | | |
| 1006. | Assessments | months @ $ | 0.00/month  $ | | | |
| 1007. | Aggregate Adjustment | | $-576.02 | | | |
| **1100.** | **Title Charges** | | | | | |
| 1101. | Title services and lender's title insurance | | | (from GFE #4) | 1,245.65 | |
| 1102. | Settlement or closing fee | to | $ | | | |
| 1103. | Owner's title insurance | | | (from GFE #5) | | |
| 1104. | Lender's title insurance | | $485.65 | | | |
| 1105. | Lender's title policy limit $177,149.00  Lender's Policy | | | | | |
| 1106. | Owner's title policy limit $0.00  Owner's Policy | | | | | |
| 1107. | Agent's portion of the total title insurance premium | | $388.52 | | | |
| 1108. | Underwriter's portion of the total title insurance premium | | $97.13 | | | |
| 1109. | ER-8.1 EPL | to GENERAL TITLE INSURAN $50.00 | | | | |
| 1110. | ER-9 REM | to GENERAL TITLE INSURAN $150.00 | | | | |
| 1111. | ER-107 SameSurvey | to GENERAL TITLE INSURAN $25.00 | | | | |
| **1200.** | **Government Recording and Transfer Charges** | | | | | |
| 1201. | Government recording charges | | $ | (from GFE #7) | 124.00 | |
| 1202. | Deed $ | Mortgage $124.00 | Release $ | | | |
| 1203. | Transfer taxes | | $ | (from GFE #8) | | |
| 1204. | Conveyance Fee/Tax | Deed $ | Mortgage $ | | | |
| 1205. | State tax/stamps | Deed $ | Mortgage $ | | | |
| 1206. | Deed $ | Mortgage $ | Release $ | | | |
| **1300.** | **Additional Settlement Charges** | | | | | |
| 1301. | Required services that you can shop for | | | (from GFE #6) | | |
| 1302. | | to | | | | |
| 1303. | | to | | | | |
| 1304. | | to | | | | |
| 1305. | | to | | | | |
| **1400. Total Settlement Charges**(enter on lines 103, Section J and 502. Sect on K) | | | | | 517.09 | 0.00 |

*Paid outside of closing by (B)orrower, (S)eller, (L)ender, (I)nvestor, Bro(K)er. **Credit by lender shown on page 1. ***Credit by seller shown on page 1.

## Comparison of Good Faith Estimate (GFE) and HUD-1 Charges

| Charges That Cannot Increase | HUD-1 Line Number | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Our origination charge | # 801 | 731.95 | 731.95 |
| Your credit or charge (points) for the specific interest rate chosen | # 802 | -3,985.85 | -3,985.85 |
| Your adjusted origination charges | # 803 | -3,253.90 | -3,253.90 |
| Transfer taxes | # 1203 | 0.00 | 0.00 |

| Charges That In Total Cannot Increase More Than 10% | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Government recording charges | # 1201 | 186.00 | 124.00 |
| Flood certification | # 807 | 11.00 | 11.00 |
| Mortgage insurance premium | # 902 | 17.71 | 17.71 |
| Owner's title insurance | # 1103 | 0.00 | 0.00 |
|  | # |  |  |
|  | # |  |  |
|  | # |  |  |
|  | # |  |  |
| Total | | 214.71 | 152.71 |
| Increase between GFE and HUD-1 Charges | | $ -62.00 or | -28.8762% |

| Charges That Can Change | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Initial deposit for your escrow account | # 1001 | 1,178.24 | 1,304.98 |
| Daily interest charges from | # 901  $23.0500/day | 345.80 | 299.65 |
| Homeowner's insurance | # 903 | 0.00 | 768.00 |
| Title services and lender's title insurance | # 1101 | 1,492.80 | 1,245.65 |
|  | # |  |  |
|  | # |  |  |
|  | # |  |  |

## Loan Terms

| | |
|---|---|
| Your initial loan amount is | $177,149.00 |
| Your loan term is | 30. years |
| Your initial interest rate is | 4.7500% |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | $1,004.71 includes<br>[X] Principal<br>[X] Interest<br>[X] Mortgage Insurance |
| Can your interest rate rise? | [X] No.  ☐ Yes, it can rise to a maximum of ____ %. The first change will be on  /  /  and can change again every ____ years after  /  / . Every change date, your interest rate can increase or decrease by ____ %. Over the life of the loan, your interest rate is guaranteed to never be **lower** than ____ % or **higher** than ____ %. |
| Even if you make payments on time, can your loan balance rise? | [X] No.  ☐ Yes, it can rise to a maximum of $ ____ . |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | [X] No.  ☐ Yes, the first increase can be on  /  /  and the monthly amount owed can rise to $ ____ . The maximum it can ever rise to is $ ____ . |
| Does your loan have a prepayment penalty? | [X] No.  ☐ Yes, your maximum prepayment penalty is $ ____ . |
| Does your loan have a balloon payment? | [X] No.  ☐ Yes, you have a balloon payment of $ ____ due in ____ years on  /  / . |
| Total monthly amount owed including escrow account payments | ☐ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself.<br>[X] You have an additional monthly escrow payment of $414.60 that results in a total initial monthly amount owed of $1,419.31. This includes principal, interest, a_ mortgage insurance and any items checked below:<br>[X] Property taxes       [X] Homeowner's insurance<br>☐ Flood insurance       ☐ |

**Note:** If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

**Loan History for Loan** ████████

| Trans Dt | Effective Dt | Due Dt | Trans Desc | Reason Desc | Trans | Principal | Interest | Escrow | Suspense | Other | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/10/2015 | 07/10/2015 | 07/01/2015 | 172 - ModifiedCouponPayment | | $1,425.94 | $242.16 | $681.93 | $501.85 | $0.00 | | Principal Balance: | $172,034.27 |
| | | | | | | | | | | | Escrow Balance: | $1,258.35 |
| 07/02/2015 | 07/02/2015 | 09/01/2015 | 310 - MortgageInsuranceDisb | | ($79.34) | $0.00 | $0.00 | ($79.34) | $0.00 | | Principal Balance: | $172,276.43 |
| | | | | | | | | | | | Escrow Balance: | $756.50 |
| 06/12/2015 | 06/12/2015 | 06/01/2015 | 172 - ModifiedCouponPayment | | $1,425.94 | $241.21 | $682.88 | $501.85 | $0.00 | | Principal Balance: | $172,276.43 |
| | | | | | | | | | | | Escrow Balance: | $835.84 |
| 06/02/2015 | 06/02/2015 | 09/01/2015 | 310 - MortgageInsuranceDisb | | ($79.34) | $0.00 | $0.00 | ($79.34) | $0.00 | | Principal Balance: | $172,517.64 |
| | | | | | | | | | | | Escrow Balance: | $333.99 |
| 05/21/2015 | 05/21/2015 | 06/01/2015 | 312 - CountyTaxDisb | | ($2,078.06) | $0.00 | $0.00 | ($2,078.06) | $0.00 | | Principal Balance: | $172,517.64 |
| | | | | | | | | | | | Escrow Balance: | $413.33 |
| 05/14/2015 | 05/14/2015 | 05/01/2015 | 172 - ModifiedCouponPayment | | $1,425.94 | $240.26 | $683.83 | $501.85 | $0.00 | | Principal Balance: | $172,517.64 |
| | | | | | | | | | | | Escrow Balance: | $2,491.39 |
| 05/04/2015 | 05/04/2015 | 09/01/2015 | 310 - MortgageInsuranceDisb | | ($79.34) | $0.00 | $0.00 | ($79.34) | $0.00 | | Principal Balance: | $172,757.90 |
| | | | | | | | | | | | Escrow Balance: | $1,989.54 |
| 04/13/2015 | 04/13/2015 | 04/01/2015 | 172 - ModifiedCouponPayment | | $1,425.94 | $239.31 | $684.78 | $501.85 | $0.00 | | Principal Balance: | $172,757.90 |
| | | | | | | | | | | | Escrow Balance: | $2,068.88 |
| 04/02/2015 | 04/02/2015 | 09/01/2015 | 310 - MortgageInsuranceDisb | | ($79.34) | $0.00 | $0.00 | ($79.34) | $0.00 | | Principal Balance: | $172,997.21 |
| | | | | | | | | | | | Escrow Balance: | $1,567.03 |
| 03/10/2015 | 03/10/2015 | 03/01/2015 | 172 - ModifiedCouponPayment | | $1,425.94 | $238.37 | $685.72 | $501.85 | $0.00 | | Principal Balance: | $172,997.21 |
| | | | | | | | | | | | Escrow Balance: | $1,646.37 |
| 03/03/2015 | 03/03/2015 | 09/01/2015 | 310 - MortgageInsuranceDisb | | ($79.34) | $0.00 | $0.00 | ($79.34) | $0.00 | | Principal Balance: | $173,235.58 |
| | | | | | | | | | | | Escrow Balance: | $1,144.52 |
| 02/10/2015 | 02/10/2015 | 02/01/2015 | 172 - ModifiedCouponPayment | | $1,425.94 | $237.43 | $686.66 | $501.85 | $0.00 | | Principal Balance: | $173,235.58 |
| | | | | | | | | | | | Escrow Balance: | $1,223.86 |
| 02/03/2015 | 02/03/2015 | 09/01/2015 | 310 - MortgageInsuranceDisb | | ($79.34) | $0.00 | $0.00 | ($79.34) | $0.00 | | Principal Balance: | $173,473.01 |
| | | | | | | | | | | | Escrow Balance: | $722.01 |
| 01/30/2015 | 01/30/2015 | | 766 - MiscellaneousCorpAdvRepay | | $0.18 | $0.00 | $0.00 | $0.00 | $0.00 | | Principal Balance: | $173,473.01 |
| | | | | | | | | | | | Escrow Balance: | $801.35 |

| Date | Date | Date | Transaction | Note | Amount | Amount | Amount | Amount | Amount | | Balance | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/12/2015 | 01/12/2015 | 01/01/2015 | 172 - ModifiedCouponPayment | | $1,425.94 | $236.49 | $687.60 | $501.85 | $0.00 | | Principal Balance:<br>Escrow Balance: | $173,473.01<br>$801.35 |
| 01/05/2015 | 01/05/2015 | 09/01/2015 | 310 - MortgageInsuranceDisb | | ($79.34) | $0.00 | $0.00 | ($79.34) | $0.00 | | Principal Balance:<br>Escrow Balance: | $173,709.50<br>$299.50 |
| 12/31/2014 | 12/31/2014 | 01/01/2015 | 312 - CountyTaxDisb | | ($2,078.06) | $0.00 | $0.00 | ($2,078.06) | $0.00 | | Principal Balance:<br>Escrow Balance: | $173,709.50<br>$378.84 |
| 12/29/2014 | 12/29/2014 | | 766 - MiscellaneousCorpAdvRepay | | $0.36 | $0.00 | $0.00 | $0.00 | $0.00 | | Principal Balance:<br>Escrow Balance: | $173,709.50<br>$2,456.90 |
| 12/15/2014 | 12/15/2014 | 12/01/2014 | 172 - ModifiedCouponPayment | | $1,425.94 | $235.56 | $688.53 | $501.85 | $0.00 | | Principal Balance:<br>Escrow Balance: | $173,709.50<br>$2,456.90 |
| 12/03/2014 | 12/03/2014 | 09/01/2015 | 310 - MortgageInsuranceDisb | | ($79.34) | $0.00 | $0.00 | ($79.34) | $0.00 | | Principal Balance:<br>Escrow Balance: | $173,945.06<br>$1,955.05 |
| 11/14/2014 | 11/14/2014 | 11/01/2014 | 172 - ModifiedCouponPayment | | $1,425.94 | $234.63 | $689.46 | $501.85 | $0.00 | | Principal Balance:<br>Escrow Balance: | $173,945.06<br>$2,034.39 |
| 11/04/2014 | 11/04/2014 | 09/01/2015 | 310 - MortgageInsuranceDisb | | ($79.34) | $0.00 | $0.00 | ($79.34) | $0.00 | | Principal Balance:<br>Escrow Balance: | $174,179.69<br>$1,532.54 |
| 10/14/2014 | 10/14/2014 | 11/01/2014 | 173 - IrregularPayment | | $36.96 | $0.00 | $0.00 | $0.00 | $0.00 | | Principal Balance:<br>Escrow Balance: | $174,179.69<br>$1,611.88 |
| 10/14/2014 | 10/14/2014 | 10/01/2014 | 172 - ModifiedCouponPayment | | $1,419.31 | $233.70 | $690.39 | $495.22 | $0.00 | | Principal Balance:<br>Escrow Balance: | $174,179.69<br>$1,611.88 |
| 10/13/2014 | 10/13/2014 | 10/01/2014 | 351 - HomeownersInsuranceDisb | | ($882.00) | $0.00 | $0.00 | ($882.00) | $0.00 | | Principal Balance:<br>Escrow Balance: | $174,413.39<br>$1,116.66 |
| 10/03/2014 | 10/03/2014 | 09/01/2015 | 310 - MortgageInsuranceDisb | | ($79.34) | $0.00 | $0.00 | ($79.34) | $0.00 | | Principal Balance:<br>Escrow Balance: | $174,413.39<br>$1,998.66 |
| 09/23/2014 | 09/23/2014 | 09/01/2014 | 172 - ModifiedCouponPayment | | $1,419.31 | $232.78 | $691.31 | $495.22 | $0.00 | | Principal Balance:<br>Escrow Balance: | $174,413.39<br>$2,078.00 |
| 09/15/2014 | 09/15/2014 | 09/01/2014 | 148 - BadCheckReversal | Returned Item Reversal | $0.00 | ($232.78) | ($691.31) | ($495.22) | $0.00 | | Principal Balance:<br>Escrow Balance: | $174,646.17<br>$1,582.78 |
| 09/09/2014 | 09/09/2014 | 09/01/2014 | 172 - ModifiedCouponPayment | | $1,419.31 | $232.78 | $691.31 | $495.22 | $0.00 | | Principal Balance:<br>Escrow Balance: | $174,413.39<br>$2,078.00 |
| 09/03/2014 | 09/03/2014 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | Principal Balance:<br>Escrow Balance: | $174,646.17<br>$1,582.78 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/13/2014 | 08/13/2014 | 09/01/2014 | 173 - IrregularPayment | | $0.00 | $0.00 | $0.00 | $72.54 | ($72.54) | | **Principal Balance:** $174,646.17 <br> **Escrow Balance:** $1,663.40 |
| 08/12/2014 | 08/12/2014 | 09/01/2014 | 173 - IrregularPayment | | $72.54 | $0.00 | $0.00 | $0.00 | $72.54 | | **Principal Balance:** $174,646.17 <br> **Escrow Balance:** $1,590.86 |
| 08/12/2014 | 08/12/2014 | 08/01/2014 | 172 - ModifiedCouponPayment | | $1,419.31 | $231.86 | $692.23 | $495.22 | $0.00 | | **Principal Balance:** $174,646.17 <br> **Escrow Balance:** $1,590.86 |
| 08/04/2014 | 08/04/2014 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | **Principal Balance:** $174,878.03 <br> **Escrow Balance:** $1,095.64 |
| 07/18/2014 | 07/18/2014 | 07/01/2014 | 173 - IrregularPayment | | $1,420.00 | $230.95 | $693.14 | $495.22 | $0.00 | | **Principal Balance:** $174,878.03 <br> **Escrow Balance:** $1,176.26 |
| 07/03/2014 | 07/03/2014 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | **Principal Balance:** $175,108.98 <br> **Escrow Balance:** $681.04 |
| 06/19/2014 | 06/19/2014 | 06/01/2014 | 173 - IrregularPayment | | $1,420.00 | $230.04 | $694.05 | $495.22 | $0.00 | | **Principal Balance:** $175,108.98 <br> **Escrow Balance:** $761.66 |
| 06/03/2014 | 06/03/2014 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | **Principal Balance:** $175,339.02 <br> **Escrow Balance:** $266.44 |
| 05/21/2014 | 05/21/2014 | | 766 - MiscellaneousCorpAdvRepay | | $0.09 | $0.00 | $0.00 | $0.00 | $0.00 | | **Principal Balance:** $175,339.02 <br> **Escrow Balance:** $347.06 |
| 05/20/2014 | 05/20/2014 | 06/01/2014 | 312 - CountyTaxDisb | | ($2,105.36) | $0.00 | $0.00 | ($2,105.36) | $0.00 | | **Principal Balance:** $175,339.02 <br> **Escrow Balance:** $347.06 |
| 05/12/2014 | 05/12/2014 | 06/01/2014 | 175 - PrincipalCurtailment | | $0.69 | $0.69 | $0.00 | $0.00 | $0.00 | | **Principal Balance:** $175,339.02 <br> **Escrow Balance:** $2,452.42 |
| 05/12/2014 | 05/12/2014 | 05/01/2014 | 173 - IrregularPayment | | $1,419.31 | $229.13 | $694.96 | $495.22 | $0.00 | | **Principal Balance:** $175,339.71 <br> **Escrow Balance:** $2,452.42 |
| 05/02/2014 | 05/02/2014 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | **Principal Balance:** $175,568.84 <br> **Escrow Balance:** $1,957.20 |
| 04/15/2014 | 04/15/2014 | 05/01/2014 | 175 - PrincipalCurtailment | | $0.69 | $0.69 | $0.00 | $0.00 | $0.00 | | **Principal Balance:** $175,568.84 <br> **Escrow Balance:** $2,037.82 |
| 04/15/2014 | 04/15/2014 | 04/01/2014 | 173 - IrregularPayment | | $1,419.31 | $228.22 | $695.87 | $495.22 | $0.00 | | **Principal Balance:** $175,569.53 <br> **Escrow Balance:** $2,037.82 |
| 04/09/2014 | 04/09/2014 | | 766 - MiscellaneousCorpAdvRepay | | $0.09 | $0.00 | $0.00 | $0.00 | $0.00 | | **Principal Balance:** $175,797.75 <br> **Escrow Balance:** $1,542.60 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/03/2014 | 04/03/2014 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | Principal Balance: Escrow Balance: | $175,797.75 $1,542.60 |
| 03/21/2014 | 03/21/2014 | 04/01/2014 | 173 - IrregularPayment | | $36.96 | $0.00 | $0.00 | $0.00 | $0.00 | | Principal Balance: Escrow Balance: | $175,797.75 $1,623.22 |
| 03/21/2014 | 03/21/2014 | 03/01/2014 | 172 - ModifiedCouponPayment | | $1,419.31 | $227.32 | $696.77 | $495.22 | $0.00 | | Principal Balance: Escrow Balance: | $175,797.75 $1,623.22 |
| 03/04/2014 | 03/04/2014 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | Principal Balance: Escrow Balance: | $176,025.07 $1,128.00 |
| 02/26/2014 | 02/26/2014 | | 766 - MiscellaneousCorpAdvRepay | | $0.18 | $0.00 | $0.00 | $0.00 | $0.00 | | Principal Balance: Escrow Balance: | $176,025.07 $1,208.62 |
| 02/18/2014 | 02/18/2014 | 03/01/2014 | 175 - PrincipalCurtailment | | $0.69 | $0.69 | $0.00 | $0.00 | $0.00 | | Principal Balance: Escrow Balance: | $176,025.07 $1,208.62 |
| 02/18/2014 | 02/18/2014 | 02/01/2014 | 173 - IrregularPayment | | $1,419.31 | $226.43 | $697.66 | $495.22 | $0.00 | | Principal Balance: Escrow Balance: | $176,025.76 $1,208.62 |
| 02/04/2014 | 02/04/2014 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | Principal Balance: Escrow Balance: | $176,252.19 $713.40 |
| 01/29/2014 | 01/29/2014 | | 766 - MiscellaneousCorpAdvRepay | | $3.59 | $0.00 | $0.00 | $0.00 | $0.00 | | Principal Balance: Escrow Balance: | $176,252.19 $794.02 |
| 01/03/2014 | 01/03/2014 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | Principal Balance: Escrow Balance: | $176,252.19 $794.02 |
| 12/30/2013 | 12/30/2013 | | 766 - MiscellaneousCorpAdvRepay | | $0.09 | $0.00 | $0.00 | $0.00 | $0.00 | | Principal Balance: Escrow Balance: | $176,252.19 $874.64 |
| 12/24/2013 | 12/24/2013 | 01/01/2014 | 312 - CountyTaxDisb | | ($2,105.36) | $0.00 | $0.00 | ($2,105.36) | $0.00 | | Principal Balance: Escrow Balance: | $176,252.19 $874.64 |
| 12/06/2013 | 12/06/2013 | 01/01/2014 | 173 - IrregularPayment | | $1,419.31 | $225.53 | $698.56 | $495.22 | $0.00 | | Principal Balance: Escrow Balance: | $176,252.19 $2,980.00 |
| 12/05/2013 | 12/05/2013 | 12/01/2013 | 171 - ModifiedPayment | | $1,419.31 | $224.64 | $699.45 | $495.22 | $0.00 | | Principal Balance: Escrow Balance: | $176,477.72 $2,484.78 |
| 12/03/2013 | 12/03/2013 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | Principal Balance: Escrow Balance: | $176,702.36 $1,989.56 |
| 11/26/2013 | 11/26/2013 | | 766 - MiscellaneousCorpAdvRepay | | $74.00 | $0.00 | $0.00 | $0.00 | $0.00 | | Principal Balance: Escrow Balance: | $176,702.36 $2,070.18 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/13/2013 | 11/13/2013 | 10/01/2013 | 351 - HomeownersInsuranceDisb | | ($64.00) | $0.00 | $0.00 | ($64.00) | $0.00 | | **Principal Balance:** $176,702.36 <br> **Escrow Balance:** $2,070.18 |
| 11/05/2013 | 11/05/2013 | 11/01/2013 | 171 - ModifiedPayment | | $1,419.31 | $223.76 | $700.33 | $495.22 | $0.00 | | **Principal Balance:** $176,702.36 <br> **Escrow Balance:** $2,134.18 |
| 11/04/2013 | 11/04/2013 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | **Principal Balance:** $176,926.12 <br> **Escrow Balance:** $1,638.96 |
| 10/07/2013 | 10/07/2013 | 10/01/2013 | 173 - IrregularPayment | | $1,419.31 | $222.88 | $701.21 | $495.22 | $0.00 | | **Principal Balance:** $176,926.12 <br> **Escrow Balance:** $1,719.58 |
| 10/03/2013 | 10/03/2013 | 09/01/2014 | 310 - MortgageInsuranceDisb | | ($80.62) | $0.00 | $0.00 | ($80.62) | $0.00 | | **Principal Balance:** $177,149.00 <br> **Escrow Balance:** $1,224.36 |
| 08/29/2013 | 08/29/2013 | 10/01/2013 | 170 - PredistributedPayments | | $1,304.98 | $0.00 | $0.00 | $1,304.98 | $0.00 | | **Principal Balance:** $177,149.00 <br> **Escrow Balance:** $1,304.98 |



**Notice Date:** August 7, 2015

P.O. Box 514387
Los Angeles, CA 90051-4387

**Loan Number** ▮▮▮▮▮▮
**Property Address:**
2144 TALL TIMBERS CT
COLUMBUS OH 43228

SCOTT BUCY
2144 TALL TIMBERS CT
COLUMBUS OH 43228

Servicer: PennyMac Loan Services, LLC
Loan Type: FHA RESIDENTIAL
Trustee: GINNIE MAE

---

**ABOUT YOUR LOAN**

PennyMac Loan Services, LLC ("PennyMac") reserves the right to correct any portion of this Payoff Statement at any time, and all figures shall be subject to final verification by PennyMac. Figures may be adjusted if any previous payment received is rejected by the institution on which it is drawn, and borrower/issuer of any returned item shall remain liable for said debt. In such event, this Payoff Statement shall be deemed invalid and a new Payoff Statement must be obtained from PennyMac to reflect the correct amount due and owing.

PennyMac further reserves the right to demand additional funds before or subsequent to the release of its security interest in the property to correct any error or omission in these figures made in good faith.

---

**WHAT THIS MEANS**

This statement is to provide you with payoff information for the above referenced loan. If the funds received is less than what is required to satisfy the loan in full, PennyMac reserves the right to return the funds with an updated Payoff Statement. Please note that the security interest will not be released and interest will continue to accrue at the per diem rate until the loan is paid in full.

---

**WHAT YOU SHOULD DO**

If you will be sending funds to pay off your loan, please follow the payment instructions provided in this statement. Otherwise, no action is required.

This is an attempt by a debt collector to collect a debt. However, if your account is subject to pending bankruptcy proceedings or if you have received a discharge in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt against you personally.

---

| **Toll Free: (800) 777-4001** | **Website: www.PennyMacUSA.com** | **Payoff Payments:** | **Correspondence:** |
|---|---|---|---|
| M – F 6:00am – 6:00pm Pacific | **Secure Messaging Online:** | **Mail and Overnight Address:** | Attn: Correspondence Unit |
| Sat 7:00am – 11:00 am Pacific | Create an account and/or log in to | Attn: Payment Clearing | P.O. Box 514387 |
| Toll Free Fax: (866) 577-7205 | http://www.PennyMacUSA.com, then look for | 6101 Condor Drive | Los Angeles, CA 90051-4387 |
| | the Secured Message Center to | Moorpark, CA 93021 | **(Please do not send payments)** |
| | communicate with us securely. | **(Please do not send** | |
| | | **correspondence)** | |

PayOffDemand 08-2014

**INFORMATION ABOUT THE TOTAL DUE**

To provide you with the convenience of an extended Good-through Date, the Total Amount Due may include anticipated or projected fees and costs, additional payments, and/or escrow disbursements that will become due prior to the Good-through Date, but which are not yet due as of the date this Payoff Statement is issued.

**ADDITIONAL INFORMATION**

The amount indicated in this Statement is subject to change for various reasons, including but not limited to the following:

- We may have posted a recently submitted payment. (Please do not place a stop payment on any check).
- A fee may be assessed if a payment is returned unpaid by your financial institution for any reason.
- Additional or anticipated fees and costs may be incurred during the Good-through Date relating to collection, foreclosure, bankruptcy, or other defaults on your loan.
- Adjustments may be required to reflect disbursements made by, or payments owed to, your prior lender if the servicing of your loan was recently transferred to PennyMac.

If you are set up on Automated Clearing House (ACH) you may cancel by sending us a written notice at least 15 days prior to your next due date. Alternatively, you must cancel the ACH service by calling (800) 777-4001 and speaking to a Loan Specialist at least three (3) business days prior to your scheduled payment date in order to avoid a draft from occurring prior to payoff.

**PAYOFF**

Loan Number █████████

Verification of payoff figures is required prior to payoff. Hold $1,425.94 for 30 days to allow clearance of the last payment received if payment posted within 15 business days from the payoff statement date or provide proof of payment clearance at time payoff funds are submitted. If this obligation is not paid in full by this date, then you should obtain an updated payoff amount from PennyMac before closing.

| | |
|---|---|
| Figures as of: | August 31, 2015 |
| Loan is Due For: | August 1, 2015 |
| Current Interest Rate: | 4.75000 % |

Funds received after 08/31/2015 will require $680.97 of additional interest per month

Payoff Breakdown:

| | |
|---|---|
| Current Principal Balance: | $172,034.27 |
| Interest Due Good Thru 08/31/2015 | $1,361.94 |
| Pro Rata MIP: | $158.68 |

Fees:

| | |
|---|---|
| Less Escrow: | ($1,179.01) |

**Total Payoff Amount as of:**
August 31, 2015                                                                                       $172,375.88
Prepayment penalties are subject to change, based on the terms of the Note.

**INSTRUCTIONS TO ESCROW:**

1. A late fee in the amount of $36.96 may be added after the 16th of the month.
2. Funds MUST be sent via wire transfer, cashier's check, or title checks only.

**Wiring Instructions:**
PennyMac Loan Services, LLC
ABA #026009593
Credit To: #1235983182
Loan #  ████████
Attention: Payment Clearing

**Mail or Overnight Instructions:**
PennyMac Loan Services, LLC
6101 Condor Drive
Moorpark, CA 93021
Attention: Payment Clearing

PennyMac Loan Services, LLC will prepare the release of lien and will submit for recording within the time limits established by each state.

**PENNYMAC APPRECIATES YOUR BUSINESS**

If you have any questions, please contact our Loan Specialist at (800) 777-4001 Monday through Friday, between 6:00 AM to 6:00 PM PST, 7:00AM to 11:00AM PST on Saturday.

# FHA Loans Originated prior to January 21, 2015

## Appendix 8 (C): Mortgagee Notice to Mortgagor (09/94)

This is in reply to your inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

PennyMac Loan Services, LLC will only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received.

**Note:** It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

If you have any questions regarding this notice, please contact our Loan Specialists at 1-800-777-4001.

In accordance with the Fair Debt Collection Practices Act, 15 U.S.C. section 1692 et seq., debt collectors are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to:(i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass. AS REQUIRED BY NEW YORK STATE LAW, if a creditor or debt collector receives a money judgment against you in court, state and federal laws prevent the following types of income from being taken to pay the debt: 1) Supplemental security income, (SSI); 2) Social security; 3) Public assistance (welfare); 4) Spousal support, maintenance (alimony) or child support; 5) Unemployment benefits; 6) Disability benefits; 7) Workers' compensation benefits; 8) Public or private pensions; 9) Veterans' benefits; 10) Federal student loans, federal student grants, and federal work study funds;11) and Ninety percent of your wages or salary earned in the last sixty days.

### Licensing Information

Equal Housing Opportunity © 2008-2015 PennyMac Loan Services, LLC, 6101 Condor Drive, Suite 200, Moorpark, CA 93021, 818-224-7442. NMLS ID # 35953 (www.nmlsconsumeraccess.org). Trade/service marks are the property of PennyMac Loan Services, LLC and/or its subsidiaries or affiliates. Arizona Mortgage Banker License # 0911088. Licensed by the Department of Business Oversight under the California Residential Mortgage Lending Act. Colorado: Regulated by the Division of Real Estate. Colorado office: 700 17th St, Suite 200, Denver, CO 80202, (866) 436-4766. Georgia Residential Mortgage Licensee #33027. Illinois Residential Mortgage Licensee # MB.6760595. Massachusetts Mortgage Lender License # ML35953. Minnesota: This is not an offer to enter into an agreement and an offer may only be made pursuant to Minn. Stat. §47.206 (3) & (4). Licensed by the Mississippi Department of Banking and Consumer Finance. Licensed by the New Hampshire Banking Department. Licensed by the N.J. Department of Banking and Insurance. North Carolina Permit No. 104753. Ohio Mortgage Broker Act Mortgage Banker Exemption # MBMB.850062.000. Rhode Island Lender License # 20092600LL. Washington Consumer Loan License # CL-35953. For a complete listing of state licenses and important notices, please visit www.pennymacusa.com/state-licenses. Loans not available in New York. Some products may not be available in all states. Information, rates and pricing are subject to change without prior notice at the sole discretion of PennyMac Loan Services, LLC. All loan programs subject to borrowers meeting appropriate underwriting conditions. This is not a commitment to lend. Other restrictions apply. All rights reserved. (06-2015)



**PennyMac**®

P.O. Box 514387
Los Angeles, CA 90051-4387



UNITED STATES POSTAGE
PITNEY BOWES

02 1P
0000813235        AUG 13 2015
MAILED FROM ZIP CODE 76155

$ 002.30⁰

RECEIVED
AUG 1 8 2015

