# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT BUCY, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 2:15-cv-2909 |
| | : | |
| v. | : | |
| | : | |
| PENNY MAC LOAN SERVICES, LLC, et al., | : | CHIEF JUDGE SARGUS |
| | : | |
| Defendants. | : | MAGISTRATE JUDGE KEMP |

**DEFENDANT GOVERNMENT NATIONAL MORTGAGE ASSOCIATION'S MOTION TO DISMISS IT AS A PARTY DEFENDANT TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Now comes Defendant United States of America, Government National Mortgage Association ("Ginnie Mae"), by and through its attorneys, Benjamin C. Glassman, Acting United States Attorney for the Southern District of Ohio, Leah M. Wolfe, Special Assistant United States Attorney, and Deborah F. Sanders, Assistant United States Attorney for said District, and pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves the Court to dismiss it as a party to Plaintiff's First Amended Complaint (ECF No. 22). Grounds for said motion are more particularly described in the accompanying memorandum in support.

(signatures on following page)

Respectfully submitted,

BENJAMIN C. GLASSMAN
Acting United States Attorney

s/Leah M. Wolfe
LEAH M. WOLFE (0093299)
Special Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614) 469-5715 Fax: (614) 469-5240
leah.wolfe@usdoj.gov


s/Deborah F. Sanders
DEBORAH F. SANDERS (0043575)
Assistant United States Attorney
Attorney for Defendant
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 469-5715
Fax: (614) 469-5240
E-mail: Deborah.Sanders@usdoj.gov


Of counsel:

Ayasha Ainashbekova
Attorney Advisor
Office of General Counsel
Office of Finance, Administrative and Procurement Law
U.S. Department of Housing and Urban Development

## MEMORANDUM IN SUPPORT

I.     INTRODUCTION

Plaintiff Scott Bucy filed his Complaint (ECF No. 1) against Defendants PennyMac Loan Services, LLC, Ginnie Mae, and Mortgage Electronic Registration Systems, Inc., on October 14, 2015, claiming violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and Ohio's Consumer Sales Practices Act, R.C. 1345.01, *et seq.*, and asserting claims for quiet title and declaratory judgment.[1] Defendants PennyMac and MERS moved to dismiss the Complaint on December 28, 2015 (ECF No. 16).

Plaintiff filed his First Amended Complaint on January 21, 2016 (ECF No. 22). Defendants PennyMac and MERS again moved to dismiss Plaintiff's claims on February 4, 2016 (ECF No. 24). That motion has been fully briefed and remains pending.

II.     FACTS

    **A. The Government National Mortgage Association**

The Government National Mortgage Association is a corporation wholly owned by the United States within the Department of Housing and Urban Development. 12 U.S.C. §1717(a)(2)(A). The principal activity of Ginnie Mae is the administration of its mortgage-backed securities ("MBS") program under Section 306(g) of the National Housing Act, 12 U.S.C. § 1721(g). Through this program, Ginnie Mae guarantees the timely payment of principal and interest on securities issued by mortgage lenders

---

[1] Service of the Complaint was not perfected as to Ginnie Mae.

1

("Issuers").[2] MBS guaranteed by Ginnie Mae have as collateral federally insured or guaranteed mortgage loans. *See* Exhibit A, Guaranty Agreement, at p. 1. In order to make such securities attractive to private investors, Ginnie Mae guarantees that holders of the MBS will receive timely payment of principal and interest, and Ginnie Mae's guaranty is backed by the full faith and credit of the United States.[3] *Id*. The issuer serves as mortgagee and is solely responsible for servicing the pooled mortgages and the securities backed by these mortgages. *See id.* at p. 6.

Ginnie Mae-approved Issuers originate or purchase mortgage loans, which are pooled by the Issuers to provide the base and backing for the securities. *See* generally Exhibit A. Issuers then sell the Ginnie Mae-guaranteed securities to the public. *Id*. Ginnie Mae permits Issuers to hold nominal title in order to service the mortgages for Ginnie Mae. *See id.* at p. 6. Ginnie Mae does not participate in the origination of individual mortgage loans and plays no part in determining the terms of loans made by lenders to borrowers. *See generally* 12 U.S.C. § 1717.

Mortgages that are eligible to back Ginnie Mae-guaranteed MBS are (1) mortgages insured under the National Housing Act; (2) mortgages guaranteed by the Department of Veterans Affairs; (3) mortgages guaranteed by the Rural Housing Service; or (4) mortgages guaranteed by the Secretary of Housing and Urban

---

[2] Issuers and Ginnie Mae enter into a standard Guaranty Agreement, which is included as Appendix III-15 to Ginnie Mae's MBS Guide, and is available at http://www.ginniemae.gov/doing_business_with_ginniemae/issuer_resources/MBSGuideAppendicesLib/Appendix_III-15.pdf. A copy is attached for the Court's convenience as Exhibit A.

[3] By making the MBS more secure and thus more attractive, Ginnie Mae's guaranty helps attract more capital into the secondary mortgage market, making more funds available for the FHA-insured and VA-guaranteed loans to low and moderate income home buyers, and thus serving the public purpose of helping to increase home ownership. *See generally* 12 U.S.C. § 1716.

Development under section 184 of the Housing and Community Development Act of 1992. 12 U.S.C. § 1717(b)(1). Ginnie Mae does not set standards for the mortgages that are to be federally insured or guaranteed; rather, each agency that provides the mortgage insurance or loan guaranty sets the standards for the mortgage or loan originated. *See generally* 12 U.S.C. § 1717. The National Housing Act, 12 U.S.C. § 1701 *et seq.*, sets out standards under which the Federal Housing Administration, a component of HUD that is separate from Ginnie Mae, may insure mortgages. *See, e.g.,* 12 U.S.C. § 1709(a)); *see also* Ginnie Mae, *Mortgage-Backed Securities (MBS) Guide* (October 16, 2015), Chapter 9-2(A), *available at* http://www.ginniemae.gov/doing_business_with_ginniemae/issuer_ resources/Pages/MBSGuideLib.aspx.[4]

In connection with each pool of mortgages for which an Issuer intends to issue a security and is seeking a Ginnie Mae guaranty for such security, the Issuer and Ginnie Mae execute a "Guaranty Agreement." As a condition to providing the guaranty, Ginnie Mae requires Issuers to assign the mortgages to Ginnie Mae. *See* Exhibit A at p. 5. Ginnie Mae then permits the Issuer to hold legal title and service the mortgage loans on its own behalf. *See* Exhibit A at p. 6. The assignment of the mortgage is required so that if the Issuer defaults on its obligation to Ginnie Mae, Ginnie Mae can immediately extinguish the Issuer's interests in the mortgage loans. Unless and until Ginnie Mae

---

[4] The Ginnie Mae MBS Guide provides as follows: "Insurance/Guaranty. Each issuance of securities must be backed by a separate pool of mortgages…which… mortgage must be, and must remain, insured or guaranteed under the National Housing Act, Title V of the Housing Act of 1949, the Servicemen's Readjustment Act of 1944, chapter 37 of Title 38, United States Code, or section 184 of the Housing and Community Development Act of 1992, and must at all times comply with the requirements for obtaining and maintaining such insurance or guaranty."

3

defaults the Issuer, legal title to the mortgage loans remain with the Issuer. *See, e.g.*, *United States v. NBD Bank*, 922 F. Supp. 1235 (E.D. Mich. 1996); *see also* Ginnie Mae, *Mortgage-Backed Securities (MBS) Guide* (October 16, 2015), *available at* http://www.ginniemae.gov/doing_business_with_ginniemae/issuer_resources/Pages/MBSGuideLib.aspx; Federal Reserve System Truth in Lending, 74 Fed. Reg. 60143 (proposed Nov. 20, 2009) (codified at 12 C.F.R. Part 226). Unlike federally chartered but privately owned secondary market entities such as the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation, Ginnie Mae does not purchase or otherwise become the holder of legal title to the loan except in the event of Issuer default. Only upon default and extinguishment of the Issuer's rights under the Guaranty Agreement does Ginnie Mae hold legal title to the mortgage title and become the servicer.

Although Ginnie Mae guarantees to the investors the timely payment of principal and interest on the MBS, it does not buy or sell the loans, issue the MBS, or service the mortgages backing Ginnie Mae-guaranteed securities. Rather, Ginnie Mae permits the lenders to hold legal title to the loans that collateralize the securities, and service the loans on their own behalf and not as agents of Ginnie Mae.

### B. Plaintiff's Mortgage

In August 2013, the borrower, Scott Bucy, entered into a mortgage loan re-finance agreement with MERS, as mortgagee and nominee for Mortgage Services III, LLC in the amount of $177,149.00. Am. Compl. at ¶ 1. The note was secured by a security deed on his home located at 2144 Tall Timbers Court, Columbus, OH 43228. *Id.*

4

at ¶ 36. On August 29, 2013, Plaintiff was notified that the loan was sold to PennyMac, and that PennyMac was the servicer of the Mortgage. *Id.* at ¶ 36.

The First Amended Complaint alleges both that Ginnie Mae *does* own Plaintiff's note and mortgage loan, *see* ¶ 88, and also that Ginnie Mae does *not* own Plaintiff's note and mortgage loan, *see* ¶ 66. It is clear, however, that Ginnie Mae owns Plaintiff's note and mortgage loan as a matter of law. Penny Mac participates in the Ginnie Mae mortgage backed securities program as a Ginnie Mae-approved Issuer by issuing securities for which Ginnie Mae guaranteed timely payment to security holders. *See generally* Def.'s Mot. to Dismiss Am. Compl. (ECF No. 24).[5] Ginnie Mae's records show that the borrower's mortgage was packaged in Penny Mac pool number AG0082, which collateralized the security issued in September 2013. *See* Loan Level Record for Ginnie Mae Loan Search, attached as Exhibit B. Thus, Penny Mac serves as mortgagee and is solely responsible for servicing the pooled mortgages and the securities backed by those mortgages. Penny Mac continues to be an active Issuer and servicer of pooled mortgages, including Plaintiff's loan. *See* Exhibit B.

**III.  Law and Argument**

    **A. Standard of Review**

        1.  Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint "state a claim to relief that is plausible on its face," or it will not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64, 678 (2009); *Bell Atlantic*

---

[5] PennyMac's website also lists it as licensed GNMA Issuer/Servicer #4094. *See* http://www.pennymacusa.com/state-licenses.

5

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a plaintiff must assert "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action" in order to establish a plausible claim. *Twombly*, 550 U.S. at 555; *see also Brown v. Matauszak*, 415 Fed.Appx. 608, 613 (6th Cir. 2011) (plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In reviewing a complaint under Rule 12(b)(6), a court must construe the complaint in favor of the plaintiff, accept the factual allegations as true, and determine whether the plaintiff has pled enough facts to state a facially plausible claim. *See Twombly*, 550 U.S. at 570; *see also Ass'n of Cleveland Fire Fighters v. Cleveland*, 502 F.3d. 645, 548 (6th Cir. 2007). A court should not accept "bare assertions of legal conclusions," *Columbia Natural Resources, Incorporated v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), "unwarranted factual inferences," *Morgan v. Church's Fried Chicken*, 892 F.2d 10, 12 (6th Cir. 1987), or otherwise "unadorned, the defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. Where the facts alleged are not sufficient to establish a valid claim, a plaintiff's complaint should be dismissed. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

Attachments to a complaint are incorporated into the pleading. *See, e.g., Odish v. Apple, Inc.*, 2015 WL 6507427, at *6 (E.D. Mich. Oct. 28, 2015) (citing *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)). However, though courts must construe a complaint's allegations in favor of a plaintiff and accept all well-pled allegations as true, if "an attachment provides facts that conflict with the pleadings, the facts alleged in the attachment prevail over those alleged in the complaint." *Id.* In cases involving mortgage loans such as the one at issue here, courts "may consider

6

documents relating to the note, mortgage, assignment…that are referenced in the complaint and integral to Plaintiffs' claims." *Johnson v. Broker Solutions, Inc.*, No. 3:15-cv-47, 2015 WL 4469276, at *2 (M.D. Tenn. July 22, 2015) (R. & R. adopted Aug. 8, 2015) (holding that a complaint alleging claims similar to the case at bar, including quiet title, declaratory relief, rescission, and violations of TILA and RESPA could not survive a motion to dismiss).

2. Federal Rule of Civil Procedure 12(b)(1)

When a party challenges subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden of pleading and proving that the court has subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182, 189 (1936); *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction are generally either facial or factual attacks on the complaint. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l*, 922 F.2d at 325. A facial attack goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction; in considering such an attack, the trial court takes the allegations of the complaint as true, similar to the analysis of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See id*. A factual attack, however, challenges the existence of subject matter jurisdiction in fact apart from any pleadings; in such a case, "no presumptive truthfulness applies to the factual allegations" in the complaint. *Id.*; *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *Ritchie*, 15 F.3d at 598; *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.

7

1990). With a factual attack, the court must weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. *Id.*; *DXL, Inc. v. Ky.*, 381 F.3d 511, 516 (6th Cir. 2004) (citations omitted).

The court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts, and this consideration does not convert the motion into a motion for summary judgment under Rule 56. *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003); *Ohio Nat'l*, 922 F.2d at 325; *see also Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986); *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947) (holding that "when a question of the district court's jurisdiction is raised. . . the court may inquire by affidavits or otherwise, into the facts as they exist"). Here, Ginnie Mae challenges Count Nine of the First Amended Complaint both factually and facially, and consequently attaches the Loan Level Record for Ginnie Mae Loan Search as Exhibit B in support of that challenge.

> **B. Counts One through Four must be dismissed as to Ginnie Mae because Ginnie Mae is not a creditor within the meaning of the Truth in Lending Act, 15 U.S.C. § 1601** *et seq.*

The Truth in Lending Act provides consumers with the right to rescind a credit transaction against a creditor under certain circumstances. 15 U.S.C. § 1635. Under TILA, a "creditor" is a person who "regularly extends credit, which is payable in more than four installments in connection with loans, and is the person to whom the debt arising from the transaction is initially payable." 15 U.S.C. § 1602(g). Because Ginnie Mae is not a "creditor" within the meaning of the TILA, Counts One through Four must be dismissed as to Ginnie Mae.

8

Ginnie Mae only guarantees securities backed by federally insured or guaranteed mortgages; it does not extend consumer credit to individuals, nor does it participate in the primary mortgage market. Ginnie Mae neither originated nor serviced Plaintiff's mortgage, and did not accept any payments from Plaintiff. *See* Exhibit B. As a matter of law, Ginnie Mae is not a creditor within the meaning of the TILA because it did not originally extend credit to Plaintiff and his debt was not "initially payable" to GNMA. Therefore, Counts One through Four must be dismissed as to Ginnie Mae.

### C. Count Five does not state a claim against Ginnie Mae because Ginnie Mae is not a servicer under RESPA.

Even if Plaintiff intended to state claims against Ginnie Mae in Count Five, any such claim would fail because Ginnie Mae is specifically exempted from the definition of a servicer under the Real Estate Settlement Procedures Act. *See* 12 U.S.C. § 2605(i)(2)(B). Because Ginnie Mae is not a Servicer within the meaning of the RESPA, and because Count Five appears to allege claims against only Defendant PennyMac, this Count must be dismissed as to Ginnie Mae.

### D. Count Six does not state a claim against Ginnie Mae because Ginnie Mae is not a debt collector under the FDCPA.

Even if Plaintiff intended to state claims against Ginnie Mae in Count Six, any such claim would fail because Ginnie Mae is not a debt collector within the meaning of the Fair Debt Collection Practices Act. Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

9

owed or due another." 15 U.S.C. § 1692A(6). Under the statute, "creditors, mortgag[ees], and mortgage servicing companies are *not* debt collectors and are statutorily exempt from liability under the FDCPA." *Blick v. Wells Fargo Bank, N.A.*, No. 3:11-cv-81, 2012 WL 1030137, at *7 (W.D. Va. Mar. 27, 2012) (emphasis added) (citing *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647-48 (E.D. Va. 2010), *aff'd* 442 Fed. App'x 816 (4th Cir. 2011) (*per curiam*)). Courts have routinely found that "Congress only intended the FDCPA to apply to debt collectors, and not creditors themselves." *Id.*; *see also Areebuddin v. Onewest Bank, F.S.B.*, No. 1:09-cv-1083, 2010 WL 1229233, at *6 (E.D. Va. March 24, 2010); *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va. 2003)); *SunTrust Mortg., Inc. v. Pippin*, No. 5:10-cv-1, 2012 WL 5023109, at *5-6 (W.D.N.C. Oct. 16, 2012); *Jolly v. Acad. Collection Serv.*, 400 F. Supp. 2d 851, 859 (M.D.N.C. 2005). Plaintiff has not alleged that Ginnie Mae has collected or attempted to collect any payments from Plaintiff. S*ee generally* Am. Compl. at p. 14.  Therefore, since Ginnie Mae is not a debt collector within in the meaning of the FDCPA, Count Six of the First Amended Complaint fails to state a claim against Ginnie Mae and must be dismissed.

### E. Count Seven's claims under Ohio's CSPA must be dismissed.

1. Preemption

Plaintiff's claims under the Ohio Consumer Sales Practices Act are preempted by federal law. It is axiomatic that state law cannot preempt federal law or create duties and obligations upon the federal government. U.S. Const., Art. VI, cl. 2; *see also Pipkin v. Mtg. Creditcorp, Inc.*, 72 F.3d 138 (Table), 1995 WL 747437 at *2-3 (10th Cir. Dec. 18, 1995) (finding that federal statute creating Ginnie Mae preempted Texas recording law).

10

Ginnie Mae's enabling statute specifically provides that "[n]o State or local law…shall preclude or limit the exercise by [Ginnie Mae] of…its ownership rights…in the mortgages constituting the trust or pool against which the guaranteed securities are issued." 12 U.S.C. § 1721(g); *see also* 12 U.S.C. § 2605(h) (Preemption of conflicting State laws). The House of Representatives emphasized the purpose of the preemption provision, saying Ginnie Mae's "authority to contract with an issuer…to enforce such a contract or to exercise ownership rights related to the mortgages in the pool…*shall not be limited by any other Federal, state or other law*…" H.R. Conf. Rep. on S. 2719, 96th Cong., 2nd Sess. 9814 (1980) (emphasis added). In this statute, then, "Congress has emphatically expressed its intent to preempt any state law which would limit [Ginnie Mae's] rights to the mortgage pools…" *Pipkin*, 1995 WL 747437 at *3. Even a state law requiring something so minor as recording an assignment to Ginnie Mae clearly "conflict[s] with the power and rights granted to [Ginnie Mae] under its federal enabling statute" and "frustrate[s] the purposes behind the passage" of that statute. *Id*. The CSPA is much broader than the recorder statute at issue in *Pipkin*, and is thus also preempted by 12 U.S.C. § 1721(g). Because federal law preempts the CSPA, Count Seven must be dismissed as to Ginnie Mae.

    2.   Ginnie Mae is not a "supplier" within the meaning of the CSPA.

Even if federal law did not preempt the CSPA, Ginnie Mae is not a supplier within the meaning of Ohio Revised Code 1345.01(C). Plaintiff alleges violations under sections 1345.02(A), 1345.03(A), and 1345.031(A); each of these provisions relates to a "supplier" as defined by the CSPA in 1345.01(C). A supplier under the CSPA is limited

11

to "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions." R.C. 1345.01(C). When a residential mortgage is at issue, however, "'supplier' does not include an assignee or purchaser of the loan for value," and the term "seller" is limited to "a loan officer, mortgage broker, or nonbank mortgage lender." *Id*. Ginnie Mae is clearly not a loan officer, mortgage broker, or mortgage lender because it does not originate mortgages or set their terms, nor does it buy or sell the loans that back the MBS to make it an assignee or purchaser of Plaintiff's loan. S*ee generally* 12 U.S.C. § 1717. Ginnie Mae thus is not a "supplier" within the meaning of the CSPA and Plaintiff's claim against Ginnie Mae is barred by the language of the CSPA itself.

### F. Plaintiff's quiet title claim in Count Eight must fail under Ohio and federal law.

28 U.S.C. § 2410 permits suits to quiet title against the United States to be filed under state law in state courts.[6] However, Ohio courts have consistently held that "when a borrower voluntarily signs a mortgage, that mortgage cannot be removed or extinguished through a quiet title action…" *Zordich v. Christiana Bank & Trust*, No. 4:15-cv-1134, 2015 WL 9583028, at *4 (N.D.O.H Dec. 31, 2015) (collecting cases). This is because mortgages are generally "not an adverse interest nor a cloud on the title to the property." *Id*. Thus, well-established Ohio precedent bars Plaintiff's quiet title claim.

---

[6] This statute "is limited in purpose to…clearing real estate titles of questionable or valueless Government liens" and permitting the United States to be joined as a defendant in cases foreclosing other liens. *Schmitz v. Societe Internationale*, 249 F. Supp. 757, 762-63 (D.D.C. 1966), citing *Quinn v. Hook*, 231 F. Supp. 718, 720 (E.D. Penn. 1964) (relying on the statute's House and Senate reports to find that the purpose of the statute was to "provide a method to clear real estate titles of questionable or valueless Government liens.").

12

## G. Count Nine must be dismissed as to Ginnie Mae because there is no justiciable case or controversy appropriate for declaratory judgment.

Count Nine of the First Amended Complaint claims that a "controversy exists as to whether Defendants are entitled to enforce the mortgage loan or collect any monies allegedly due thereunder," because Plaintiff purportedly exercised his right of rescission. Am. Compl. at ¶ 148. Here, however, it is clear that as a matter of law, Ginnie Mae holds title to Plaintiff's loan and that Defendant PennyMac is entitled to continue servicing the loan. This Court thus lacks subject matter jurisdiction over Count Nine, which must be dismissed.

Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), federal courts may "issue declaratory judgments only in cases of actual controversy." *Icarom, PLC v. Howard Cnty., Md.*, 904 F. Supp. 454, 457 (D. Md. 1995); *see also Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.3d 953, 955 (Fed. Cir. 1987) ("the Declaratory Judgment Act requires the existence of an actual case or controversy between the parties before a federal court can constitutionally assume jurisdiction."). Though federal courts have inherent discretion in deciding whether to hear an action for declaratory judgment, Article III, Section 2 of the Constitution limits that discretion to cases presenting a "case or controversy." *Id.*; *see also Press v. Pasadena Indep. School Dist.*, 326 F. Supp. 550, 566 (S.D. Texas 1971) (the requirement of a "case or controversy" "is not avoided by the procedural device of the declaratory judgment, which requires an 'actual controversy.'"). A "case or controversy" appropriate for adjudication exists only where "the facts alleged, under the circumstances, show that there is a substantial controversy,

13

between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citing references omitted); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (internal quotations omitted) (justiciability requires a dispute that is both "real and substantial" and "definite and concrete").

Furthermore, where a complaint "seeks a declaratory judgment concerning matters which do not present an actual controversy," that pleading "clearly fails to state a cause of action" and is therefore subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Taylor v. U.S. Bd. of Parole*, 194 F.2d 882, 883 (D.C. Cir. 1952) (citing references omitted). For two reasons, it is clear that no justiciable controversy appropriate for declaratory judgment exists here.

First, the Guaranty Agreement between Ginnie Mae and Issuers of MBS explicitly provides that "[t]he Issuer does hereby transfer, assign, set over, and otherwise convey to Ginnie Mae all the right, title, and interest of the Issuer in and to the Mortgages identified and described in the Schedule of Pooled Mortgages for the subject pool." Agreement at p. 5. The Guaranty Agreement further provides that the term "mortgage," as used therein, includes "a security instrument, together with the obligation secured thereby." Agreement at p. 3. As a matter of law, then, Ginnie Mae owns "all the right, title, and interest" in Plaintiff's note.

Second, the attachments to the Amended Complaint foreclose any dispute over the ownership of Plaintiff's loan. Despite the Amended Complaint's conflicting allegations over Ginnie Mae's ownership of the loan, *see* ¶¶ 66, 88, the exhibits attached

14

to the Amended Complaint and incorporated into it tell the real story. At least three times, the attachments indicate that Ginnie Mae is the owner of Plaintiff's loan:

- Exhibit B, page 2 (PAGEID# 187): PennyMac's response to Plaintiff's purported qualified written request of July 2015 states: "The owner/investor for the above referenced loan is Government National Mortgage Association…"
- Exhibit B, page 22 (PAGEID# 220): A payoff letter from PennyMac to Plaintiff indicates "Trustee: GINNIE MAE."
- Exhibit C, page 1 (PAGEID# 225): A letter from Plaintiff's counsel to Ginnie Mae states that "on or about July 24, 2015, PennyMac Loan Services, LLC identified Ginnie Mae as the "owner/investor" of the above-mentioned mortgage loan."

Because where "an attachment provides facts that conflict with the pleadings, the facts alleged in the attachment prevail over those alleged in the complaint," *Odish v. Apple, Inc.*, No. 15-cv-11955, 2015 WL 6507427, at *6 (E.D. Mich. Oct. 28, 2015) (citing *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)), there can be no question that Ginnie Mae is the owner of Plaintiff's mortgage loan, despite the Amended Complaint's contradictory assertions otherwise.

Thus, a review of the Guaranty Agreement governing Ginnie Mae's MBS program and Plaintiff's own submission to the Court shows there can be no such dispute. Count Nine of Plaintiff's Amended Complaint must be dismissed because it presents no actual controversy as required to invoke this Court's jurisdiction.

## IV. Conclusion

Based upon the foregoing, Defendant Ginnie Mae respectfully requests that Plaintiff's Amended Complaint be dismissed for failure to state a claim upon which relief can be granted.

    Respectfully submitted,

    BENJAMIN C. GLASSMAN
    Acting United States Attorney

    s/Leah M. Wolfe
    LEAH M. WOLFE (0093299)
    Special Assistant United States Attorney
    303 Marconi Boulevard, Suite 200
    Columbus, Ohio 43215
    (614) 469-5715 Fax: (614) 469-5240
    leah.wolfe@usdoj.gov


    s/Deborah F. Sanders
    DEBORAH F. SANDERS (0043575)
    Assistant United States Attorney
    Attorney for Defendant
    303 Marconi Boulevard, Suite 200
    Columbus, Ohio 43215
    Office: (614) 469-5715
    Fax: (614) 469-5240
    E-mail: Deborah.Sanders@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Motion to Dismiss was filed on March 21, 2016, using the Court's CM/ECF system, which will send notice to all counsel of record.

s/Leah M. Wolfe
LEAH M. WOLFE
Special Assistant United States Attorney


s/Deborah F. Sanders
DEBORAH F. SANDERS (0043575)
Assistant United States Attorney
