UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SCOTT BUCY,

              **Plaintiff,**                            **Case No. 2:15-cv-2909**
                                                              **CHIEF JUDGE EDMUND A. SARGUS, JR.**

              v.                                      **Magistrate Judge Terence P. Kemp**

**PENNYMAC LOAN SERVICES, LLC,**
**et al.,**

              **Defendants.**

## OPINION AND ORDER

    This matter is before the Court for consideration of two motions to dismiss, one filed by Defendants PennyMac Loan Services, LLC ("PennyMac") and Mortgage Electronic Registration Systems, Inc. ("MERS") [ECF No. 24], and one filed by Defendant Government National Mortgage Association ("Ginnie Mae") [ECF No. 32]. For the following reasons, Defendants' motions to dismiss [ECF Nos. 24, 32] are **GRANTED IN PART** and **DENIED IN PART**.

### I.

    Plaintiff Scott Bucy refinanced his mortgage loan on August 13, 2013 through Mortgage Services III, LLC, with MERS listed as the mortgagee. (Am. Compl. ¶¶ 36, 49 [ECF No. 22].) During the refinancing process, Plaintiff alleges that he signed a promissory note and mortgage. (*Id.* ¶ 37.) According to Plaintiff, neither he nor his wife received two copies of the "Notice of Right to Cancel." (*Id.* ¶¶ 50–51.) Plaintiff claims to have received zero copies of the Notice, and his wife purportedly received only one copy. (*Id.* ¶ 96.)

    On August 29, 2013, Mortgage Services III notified Plaintiff in writing that it had sold his mortgage loan to PennyMac. (Am. Compl. ¶ 52.) Soon after, PennyMac sent two letters to

Plaintiff. In its September 4, 2013 letter, PennyMac informed Plaintiff that it would be servicing Plaintiff's mortgage loan. (*Id.* ¶ 53.) And in its September 24, 2013 letter, PennyMac informed Plaintiff that it had purchased his mortgage loan. (*Id.* ¶ 54.) From September 2013 to July 2015, Plaintiff did not receive any additional notices that the servicing or ownership of his mortgage loan had changed. (*Id.* ¶ 56.)

On July 10, 2015, Plaintiff sent two letters to PennyMac. In the first letter, Plaintiff requested from PennyMac the name, address, and phone number of the mortgage note owner; the name, address, and phone number of the mortgage loan's master servicer; the date the current holder acquired the note; the date PennyMac began servicing the loan; the amount required to reinstate the loan; and the payoff amount for the mortgage loan. (*See* Am. Compl. ¶¶ 57–62; Req. for Info. at PageID 181–82 [ECF No. 22-1].) The second letter was a written notice purporting to rescind the mortgage loan. (*See* Am. Compl. ¶¶ 57–62; Req. for Info. at PageID 183–84.) According to Plaintiff, he "incurred at least $674.50 in legal fees and $4.16 in postage in preparing and mailing the letters to PennyMac." (Am. Compl. ¶ 58.) PennyMac received the letters on July 18, 2015. (*Id.* ¶ 63.)

On July 24, 2015, PennyMac responded by acknowledging receipt of Plaintiff's letters, identifying the owner/investor of the mortgage loan as Ginnie Mae, and providing Ginnie Mae's address. (Am. Compl. ¶¶ 64–65.) PennyMac sent another letter to Plaintiff on August 13, 2015. In that correspondence, PennyMac provided the name and address of the owner of the mortgage note, Ginnie Mae; the name and address of the mortgage loan servicer, PennyMac; a copy of the letter that PennyMac sent to Plaintiff when it acquired the mortgage in 2013; and a statement including the current payoff amount. (PennyMac Resp. at PageID 186–224 [ECF No. 22-2].)

2

PennyMac did not take any steps to effectuate Plaintiff's alleged rescission of the mortgage loan. (Am. Compl. ¶¶ 73–74.)

In a July 31, 2015 letter, Plaintiff informed Ginnie Mae that he was rescinding the mortgage loan. (Am. Compl. ¶ 76.) Plaintiff alleges that he "incurred $228.50 in legal fees and $5.18 in postage in preparing and mailing [this] letter." (*Id.* ¶ 77.) Ginnie Mae received the letter on August 7. 2015. (*Id.* ¶ 78.) Ginnie Mae did not take any steps to effectuate the purported rescission of the mortgage loan. (*Id.* ¶¶ 79–80.)

On October 14, 2015, Plaintiff brought this suit against PennyMac Ginnie Mae, and MERS. (Compl. at 17 [ECF No. 1].) Plaintiff filed a nine-count Amended Complaint on January 21, 2016. (Am. Compl. at 1.) In his Amended Complaint, Plaintiff alleges (1) that PennyMac and Ginnie Mae violated the Truth in Lending Act ("TILA") by failing to provide an accurate payoff balance within seven days of a written request for the information, (2) that Ginnie Mae violated TILA by failing to notify Plaintiff that it had acquired his mortgage loan, (3) that PennyMac and Ginnie Mae violated TILA by failing to provide Plaintiff with two copies of the "Notice of Right to Cancel" at the time the mortgage loan was refinanced, (4) that PennyMac and Ginnie Mae violated TILA by failing to provide Plaintiff with contact information for the mortgage owner and master server after receiving Plaintiff's July 10, 2015 letter, (5) that PennyMac violated the Real Estate Settlement Procedure Act ("RESPA") by failing to provide the information requested in the July 10, 2015 letter, (6) that PennyMac violated the Fair Debt Collection Practices Act ("FDCPA") by continuing to attempt to collect a debt after Plaintiff had sent notice that he was rescinding his mortgage loan, (7) that PennyMac and Ginnie Mae violated Ohio's Consumer Sales Practices Act ("CSPA") by using unfair, deceptive, and/or unconscionable acts and practices in their dealings, (8) that Plaintiff is entitled to quiet title of the subject property, and

(9) that Plaintiff is entitled to a declaratory judgment setting forth the rights, status, and legal relationship of the parties. (Am. Compl. at 9–17.) Defendants now move to dismiss these claims.[1]

## II.

### A.      Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. Generally, an action will be dismissed under this standard where "there is no law to support the claims made." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). The same holds where "the facts alleged are insufficient to state a claim." *Id.* Federal Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this standard, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). When considering a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

---

[1] Defendants PennyMac and MERS bring their motion to dismiss [ECF No. 24] under Federal Rule of Civil Procedure 12(b)(6). Ginnie Mae brings its motion to dismiss [ECF No. 32] under Rules 12(b)(6) and 12(b)(1). Ginnie Mae, however, only moves under Rule 12(b)(1) with respect to Count 9.

A court typically cannot consider "matters outside of the pleadings" when deciding a motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). There are several exceptions to this general rule though. Exhibits to the pleadings are "part of the pleadings for all purposes." Fed. R. Civ. P. 10(c). Documents not attached to a plaintiff's complaint but introduced by the defendant on a motion to dismiss will also be considered as part of the pleadings if "'they are referred to in the plaintiff's complaint and are central to her claim.'" *Weiner*, 108 F.3d at 89 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Additionally, a court may consider "materials that are public records or otherwise appropriate for taking judicial notice." *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 925 (N.D. Ohio 2009); *see also Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").

**B.      Pleading Clarifications**

To begin, Plaintiff has clarified that he does not bring several of his claims against MERS or Ginnie Mae. With respect to his claims against MERS, Plaintiff explains that "MERS is included as a party only because it is the mortgagee of record and necessary for proper resolution of Plaintiff's quiet title action." (Mem. in Opp'n to PennyMac & MERS Mot. at 12 [ECF No. 28].) Given that Plaintiff only brings his quiet title claim (Count 8) against MERS, the Court need not consider MERS' arguments as to the other claims. And with respect to Ginnie Mae, Plaintiff states that he does not bring RESPA and FDCPA claims against it. (Mem. in Opp'n to Ginnie Mae Mot. at 10–11 [ECF No. 42].) Because Plaintiff does not bring RESPA and FDCPA claims against Ginnie Mae, the Court disregards Ginnie Mae's arguments on those claims.

5

Plaintiff has not commented on whether he intended to bring his TILA notice of sale claim (Count 2) against PennyMac. Nonetheless, because Plaintiff does not direct any of his Count 2 allegations against PennyMac, (*see* Am. Compl. ¶¶ 81, 87–91 [ECF No. 22]), that claim is dismissed as to PennyMac.

**C.     TILA Claims (Counts 1 through 4)**

Plaintiff's first four claims (Counts 1 through 4) stem from PennyMac and Ginnie Mae's alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq. TILA has several purposes: "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). The statute thus requires creditors to "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id.* Given its purpose, the Sixth Circuit has "repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer." *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998). "Even technical or minor violations of the Act impose liability on the lender." *Weeden v. Auto Workers Credit Union, Inc.*, 173 F.3d 857 (Table), 1999 WL 191430, at *4 (6th Cir. Mar. 19, 1999). TILA establishes an action for damages against "any creditor who fails to comply with any requirement imposed under" its parts. 15 U.S.C. § 1640(a).

**1.     TILA Claims Against Ginnie Mae**

Ginnie Mae moves to dismiss Plaintiff's TILA claims (Counts 1 through 4) on the basis that Ginnie Mae is not a "creditor" under TILA and that Plaintiff has failed to state sufficient

facts to plausibly allege that Ginnie Mae is a creditor or an assignee of a creditor. (*See* Ginnie Mae Mot. to Dismiss at 8–9 [ECF No. 32]; Ginnie Mae Reply Br. at 2 [ECF No. 45].)

Under TILA, a "creditor" is a person who "(1) regularly extends . . . consumer credit which is payable by agreement in more than four installments . . . and (2) is the person to whom the debt arising from the consumer transaction is initially payable." *Id.* § 1602(g). As to assignee liability: a "civil action for a [TILA] violation . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary." *Id.* § 1641(a). "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." *Id.* § 1641(c). "Assignee" is not defined under TILA. As such, the term carries its normal meaning: "[o]ne to whom property rights or powers are transferred by another." *Black's Law Dictionary* 51 (4th pocket ed. 2011); *see Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning.").

In his Amended Complaint, Plaintiff alleges that Ginnie Mae "regularly extends consumer credit which is payable by agreement in four or more installments, or for which the payment of a finance charge is or may be required, and thus was and is a creditor within the meaning of TILA." (Am. Compl. ¶ 30 [ECF No. 22] (emphasis deleted).) Plaintiff provides minimal factual support for this assertion. (*See generally id.*) Plaintiff, however, does allege sufficient facts from which the Court can plausibly determine that Ginnie Mae is an assignee of a creditor. (*See, e.g.*, *id.* ¶¶ 65, 75, 88 (alleging that Ginnie Mae was the "owner/investor" of the mortgage loan); *see also Black's Law Dictionary* 51 (defining "assignee").)

7

If Plaintiff seeks to hold Ginnie Mae liable under TILA as an assignee, Plaintiff needs to plausibly allege that the purported TILA violations here were apparent on the face of the disclosure statement. *See* 15 U.S.C. § 1641(a). Plaintiff has done so in his Amended Complaint. "[A] violation apparent on the face of the disclosure statement includes, but is not limited to . . . a disclosure which can be determined to be *incomplete or inaccurate* from the face of the disclosure statement or other documents assigned." *See* 15 U.S.C. § 1641(a) (emphasis added). Plaintiff's TILA claims each involve disclosures whose deficiencies are apparent on their face— Ginnie Mae's alleged failure to timely provide (1) a payoff quote, (2) a notice of sale, (3) two rescission notices, and (4) complete information on the mortgage note's owner and master servicer. (*See* Am. Compl. at 9–12.)

Ginnie Mae makes a second argument for the dismissal of Plaintiff's TILA claims: Ginnie Mae "simply cannot be held liable for the actions of a mortgage servicer" because it is a corporation wholly owned by the United States. (Ginnie Mae Reply Br. at 2 [ECF No. 45].) Ginnie Mae did not make this argument in its motion to dismiss and, instead, raised it for the first time in its reply brief. As such, the Court declines to consider it. *Baker v. Union Twp., Ohio*, No. 1:12-cv-112, 2013 WL 4502736, at *13 (S.D. Ohio Aug. 22, 2013) ("An issue raised for the first time in a reply brief has not been fully briefed, and thus, is not appropriate for decision."); *United Tel. Co. of Ohio v. Ameritech Servs., Inc.*, No. 2:10-cv-249, 2011 WL 53462, at *3 n.2 (S.D. Ohio Jan. 7, 2011) ("[A] reply brief is not the proper place to raise an issue for the first time."); *cf. Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986) ("Plaintiff's argument on this issue was raised for the first time in his reply brief. Accordingly, it will not be considered on appeal."). Ginnie Mae's argument, moreover, draws extensively on materials outside of the

pleadings, (*see* Ginnie Mae Reply Br. at 2–4), that the Court may not consider as part of the present motion to dismiss, *see Weiner*, 108 F.3d at 89.

Because Plaintiff has pleaded sufficient facts for the Court to plausibly conclude that Ginnie Mae is an assignee, Ginnie Mae's motion to dismiss Plaintiff's TILA claims (Counts 1 through 4) is denied.

### 2. TILA Claims Against PennyMac

Plaintiff brings three TILA claims against PennyMac (Counts 1, 3, and 4). PennyMac moves to dismiss each of them.

#### a. Request for a Payoff Quote (Count 1)

Plaintiff alleges that PennyMac violated TILA, 15 U.S.C. § 1639g, by failing to send Plaintiff "an accurate payoff balance within seven business days of receipt of a written request from or on behalf of Plaintiff." (Am. Compl. ¶ 85 [ECF No. 22].) PennyMac allegedly received the request on July 18, 2015 but failed to send the payoff balance until August 13, 2015. (*Id.* ¶¶ 57–72.) Under § 1639g, "[a] creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 15 U.S.C. § 1639g.

PennyMac insists that this TILA claim (Count 1) should be dismissed because its alleged failure to send Plaintiff an accurate payoff balance within seven business days "is not material." (MERS & PennyMac Reply Br. at 2 [ECF No. 29].) PennyMac alludes to 15 U.S.C. § 1640(a)(4), which provides that "in the case of a failure to comply with any requirement under section 1639 of this title, paragraph (1) or (2) of section 1639b(c) of this title, or section 1639c(a) of this title, [a creditor is liable in] an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material."

PennyMac, however, has pointed to no legal authority that excuses violations of *§ 1639g* on the basis of materiality. (*See id.* at 1–2.) And, in fact, hinging violations of § 1639g to a finding of materiality conflicts with Sixth Circuit precedent, which has "repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer." *Begala*, 163 F.3d at 950. Accordingly, the Court denies PennyMac's motion to dismiss Count 1.

### b.    Rescission Notices (Count 3)

PennyMac moves to dismiss Plaintiff's TILA rescission claim (Count 3). Under 15 U.S.C. § 1635(a), a borrower may rescind a loan agreement if the lender fails to deliver required forms to the borrower. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998); *Lumpkin v. Deutsche Bank Nat'l Trust Co.*, 534 F. App'x 335, 337 (6th Cir. 2013). That section gives the borrower "a right to rescind for three business days from *the later of* either the day of the transaction or the date the required forms and disclosures are delivered." *Lumpkin*, 534 F. App'x at 337; *see* 15 U.S.C. § 1635(a). With respect to the required disclosures, 12 C.F.R. 1026.23(b)(1) mandates that "[i]n a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." A borrower's right to rescission expires "three years after the date of consummation of the transaction . . . notwithstanding the fact that the information and forms required under this section . . . have not been delivered." 15 U.S.C. § 1635(f).

Plaintiff alleges that PennyMac failed to provide him and his wife each two copies of the notice of the right to rescind the mortgage loan at issue. (Am. Compl. at 11–12 [ECF No. 22].) Plaintiff alleges that he received no copies of the notice and that his wife received one copy. (*Id.* at 11.) As such, Plaintiff contends that he was entitled to, and did, rescind the mortgage loan on

July 10, 2015—which falls within the three-year time period established under §§ 1635(a) and (f). (*Id.*) Plaintiff also seeks damages, costs, and attorney's fees for PennyMac's failure to honor his purported rescission of the mortgage loan. (*Id.* at 11–12.)

　PennyMac counters by attaching to its reply brief six rescission notices (three signed by Plaintiff and three signed by his wife) dated August 13, 2013. (Rescission Notices at PageID 323–28 [ECF No. 30-1].) From PennyMac's perspective, Plaintiff's TILA claim for rescission expired three business days after he received those notices.

　Given that PennyMac failed to attach the rescission notices to its motion to dismiss, the Court need not consider them. *See* S.D. Ohio Civ. R. 7.2(d) ("When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence."); *Baker*, 2013 WL 4502736, at *13.

　But even if the Court were to consider those notices, they would not mandate the dismissal of Plaintiff's TILA rescission claim. Critically, § 1635(c) provides that "written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section *does no more than create a rebuttable presumption of delivery thereof*." 15 U.S.C. § 1635(c) (emphasis added). That is, although PennyMac has, in producing six signed rescission notice forms, created a presumption that it delivered to Plaintiff two copies of the notice of the right to rescind, Plaintiff may rebut that presumption. And to evaluate whether Plaintiff has rebutted the presumption, the Court would need to consider evidence outside the scope of the documents that a court can review on a motion to dismiss. *See Weiner*, 108 F.3d at 89. Plaintiff's ability to rebut the § 1635(c) presumption is, in short, a matter to be decided on summary judgment.

The Court should also dismiss the rescission claim, PennyMac argues, because "Ohio courts have adopted the minority view that the failure to deliver two copies per consumer does not expand the time period in which to exercise the right to rescind." (MERS & PennyMac Mot. to Dismiss at 7 [ECF No. 24].) The Court, however, does not look to Ohio law or to state court decisions when interpreting TILA. Rather, the Court looks to the statute's language, decisions from the Supreme Court of the United States, and Sixth Circuit case law. None of those sources has adopted the "minority view" as to the effect of rescission notices. *See* 15 U.S.C. § 1635(a) and (f); *Beach*, 523 U.S. at 411; *Lumpkin*, 534 F. App'x at 337.

PennyMac argues that Plaintiff cannot recover damages under his rescission claim because the complained TILA violation (PennyMac's alleged failure to deliver two rescission notices to Plaintiff) is not "apparent on the face of the disclosure statement," as required when a plaintiff brings a TILA claim against an assignee rather than a creditor. (MERS & PennyMac Mot. to Dismiss at 9 (quoting 15 U.S.C. § 1641(a)).) PennyMac's argument fails, though, given that a failure to deliver two rescission notices is apparent on the face of the disclosure statement. *See* 15 U.S.C. § 1641(a) ("[A] violation apparent on the face of the disclosure statement includes . . . a disclosure which can be determined to be *incomplete* or inaccurate from the face of the disclosure statement or other documents assigned." (emphasis added)).

PennyMac argues, lastly, that Plaintiff's request for damages under Count 3 fails because a claim for damages under TILA must be brought "'within one year from the date of the occurrence of the violation.'" (MERS & PennyMac Mot. to Dismiss at 10 (quoting 15 U.S.C. § 1640(e)).) But as Plaintiff explains, his request for damages stems from PennyMac's failure to honor his purported rescission, which he sent on July 10, 2015. (*See* Mem. in Opp'n to

12

PennyMac & MERS Mot. at 11–12 [ECF No. 28].) Plaintiff then filed his Complaint on October 14, 2015—less than a year later. (Compl. at 17 [ECF No. 1].)

Plaintiff, in sum, has pleaded a plausible TILA claim for rescission and damages based on PennyMac's alleged failure to deliver two rescission notices and PennyMac's subsequent failure to honor that purported rescission. As such, the Court denies PennyMac's motion to dismiss Count 3.

### c. Owner and Master Servicer Information (Count 4)

PennyMac also moves to dismiss Plaintiff's TILA mortgage owner/master servicer identification claim (Count 4). Under 15 U.S.C. § 1641(f)(2), "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation."

In Count 4, Plaintiff alleges that PennyMac did not provide, upon receipt of his July 10, 2015 written request, the name, address, and telephone number of the owner and master servicer of the obligation. (Am. Compl. at 12 [ECF No. 22].) Plaintiff acknowledges that PennyMac, in its August 13, 2015 response to his written request, identified itself as "the current loan servicer" and Ginnie Mae as "[t]he owner/investor" of the mortgage loan. (Mem. in Opp'n to PennyMac & MERS Mot. at 9–10 [ECF No. 28].) Plaintiff alleges, however, that PennyMac—not Ginnie Mae—was the true owner of his mortgage loan and that, therefore, Defendants failed to provide him with the mortgage owner's name. (*See id.*; Am. Compl. at 7–8.) Plaintiff also alleges that PennyMac's identification of the mortgage's current loan servicer fails to meet § 1641(f)(2)'s requirement that PennyMac identify the mortgage loan's *master servicer*. (Mem. in Opp'n to

PennyMac & MERS Mot. at 10 ("[I]dentifying the servicer alone is insufficient to identify the master servicer as TILA requires because the servicer may actually be a subservicer.").)

As to Plaintiff's request for the name, address, and telephone number of the mortgage owner, PennyMac contends that it did identify the mortgage owner and that Plaintiff has provided "no factual matter to support his belief" that PennyMac, rather than Ginnie Mae, is the mortgage owner. (MERS & PennyMac Reply Br. at 3 [ECF No. 29].) Ginnie Mae, moreover, insists that it is the mortgage owner and has produced a Guaranty Agreement and internal records to demonstrate its ownership. (Ginnie Mae Mot. to Dismiss at 5, 14 [ECF No. 32].)

PennyMac's arguments miss the mark given that the Court, in considering this motion to dismiss, accepts all of Plaintiff's well-pleaded material allegations as true. *See Grindstaff*, 133 F.3d at 421. And here, Plaintiff has sufficiently pleaded his allegations regarding PennyMac's ownership of the mortgage loan. (*See* Am. Compl. ¶¶ 52–56, 65–66, 70.)

But even if the Court were to assume that Ginnie Mae is the mortgage owner here, Plaintiff alleges, and PennyMac's response to the July 10, 2015 written request appears to confirm, that PennyMac did not provide Plaintiff with Ginnie Mae's telephone number. (Am. Compl. at 12; July 10, 2015 Wetzel Ltr. to PennyMac at PageID 181 [ECF No. 22-1]; Aug. 13, 2015 PennyMac Ltr. to Wetzel at PageID 186–87 [ECF No. 22-2].) Given that Plaintiff requested the mortgage owner's telephone number but PennyMac failed to provide it, Plaintiff has pleaded a plausible claim for relief under § 1641(f)(2). *See Justice v. Ocwen Loan Servicing*, No. 2:13-cv-165, 2015 WL 235738, at *14 (S.D. Ohio Jan. 16, 2015) ("[T]he Justices also inquired about the 'address[] and telephone number of the owner of the note' and Ocwen did not provide this information. Therefore, the Court finds a violation of TILA as to the First Loan.").

As to Plaintiff's request for the name of the master servicer, PennyMac contends that its identification of itself as "the current loan servicer" and its statement that "all subsequent payments would need to be sent directly to PennyMac," satisfied Plaintiff's request. (PennyMac Resp. at PageID 186–87 [ECF No. 22-2]; *see* MERS & PennyMac Reply Br. at 3.) PennyMac, however, has not offered any binding precedent to support that contention. (*See* MERS & PennyMac Reply Br. at 3.) Plaintiff requested the name of the master servicer, not the name of the current loan servicer. *See Justice*, 2015 WL 235738, at *14 (explaining that a servicer must respond to an obligor's written request "based on the nature of the obligor's request—not based on whatever piece of information the servicer itself wants to send").

Plaintiff has pleaded a plausible claim for relief stemming from PennyMac's alleged failure to provide the name of the mortgage loan's owner and master servicer. PennyMac's motion to dismiss Count 4 is, thus, denied.

**D.     RESPA Claim (Count 5)**

PennyMac next moves to dismiss Plaintiff's RESPA claim (Count 5). Congress enacted the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., "in part to provide 'more effective advance disclosure to home buyers and sellers of settlement costs,' and in response to 'abusive practices' in the 'real estate settlement process.'" *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013) (quoting 12 U.S.C. § 2601(a), (b)(1)). RESPA "imposes certain requirements for responding to a proper information request from a borrower termed a 'qualified written request' or QWR.'" *Thornburg v. Ocwen Loan Servicing, LLC*, No. 3:14-cv-166, 2014 WL 4417776, at *3 (S.D. Ohio Sept. 8, 2014). A QWR is a "written correspondence, other than a notice on a payment coupon or other payment medium that includes, or otherwise enables the servicer to identify the name and account of the borrower

and includes a statement of the reasons for the belief of the borrower that the account is in error

or provides sufficient detail to the servicer regarding other information sought by the borrower."

12 U.S.C. § 2605(e)(1)(B). A servicer must provide a written response acknowledging receipt of

the QWR within five days, *see id.* § 2605(e)(1)(A), and provide an answer within thirty days, *see*

*id.* § 2605(e)(2). Under § 2605(e)(2), servicer can validly respond to a QWR in one of three

ways:

> A servicer can make corrections to the account. 12 U.S.C. § 2605(e)(2)(A). A
> servicer, following an investigation, can explain or clarify why the account is
> already correct. 12 U.S.C. § 2605(e)(2)(B). Or a servicer can, after an
> investigation, provide the borrower with a written explanation or clarification that
> includes information requested and explain[s] why information not provided
> cannot be obtained or provided by the servicer. 12 U.S.C. § 2605(e)(2)(C).

*Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 721 (S.D. Ohio 2014).

"When a loan servicer violates § 2605, the borrower is entitled to 'any actual damages to

the borrower as a result of the failure' and 'any additional damages, as the court may allow, in

the case of a pattern or practice of noncompliance with the requirements of [§ 2605].'" *Ogle v.*

*BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 910 (S.D. Ohio 2013) (quoting 12 U.S.C.

§ 2605(f)(1)). A plaintiff "who cannot show actual damages as required by § 2605(f), fails to

state a claim under RESPA as a matter of law." *Id.*

Plaintiff alleges that he sent a QWR to PennyMac on July 10, 2015 requesting, among

other information, (i) the name, address, and telephone number of the master servicer and owner

of the mortgage loan and (ii) the date the current noteholder acquired the note and mortgage and

from whom it acquired them. (Am. Compl. at 13 [ECF No. 22].) PennyMac allegedly failed to

provide Plaintiff with this information. (*Id.*)

PennyMac offers several reasons why the Court should dismiss the RESPA claim. First,

Plaintiff purportedly failed to send a valid QWR. According to PennyMac, Plaintiff's request for

information is not a QWR because it does not include "a statement of the reasons he believed the account to be in error." (MERS & PennyMac Reply Br. at 4 [ECF No. 29].) The Court can dispense of this argument, as a QWR may "include[] a statement of the reasons for the belief of the borrower that the account is in error *or* provide[] sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). And here, PennyMac does not suggest that Plaintiff's request contained insufficient detail regarding the information that he sought. (*See* MERS & PennyMac Reply Br. at 4.)

PennyMac next asserts that it properly responded to Plaintiff's information request. As explained above, though, Plaintiff has plausibly alleged that PennyMac did not provide the name of the mortgage loan's owner or master servicer.

Lastly, PennyMac contends that Plaintiff has failed to allege any actual damages. (MERS & PennyMac Mot. to Dismiss at 11 [ECF No. 24].) Plaintiff, however, has alleged actual damages, (*see* Am. Comp. ¶ 58)—the cost of preparing and sending his July 10, 2015 QWR letter. *See Justice*, 2015 WL 235738, at *19 ("The Court finds that the cost to prepare the QWR may qualify as actual damages. . . . [A]s the Court has previously recognized, these costs transformed from transaction costs incident to obtaining information about their loan into damages as a result of Ocwen's failure to respond.") (internal quotation marks omitted); *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 728 (S.D. Ohio 2014) ("Marais submits receipts showing postage for certified mailing of the QWR. Though she incurred these expenses and paid them prior to Chase's deficient response, these are damages. . . . [W]hen Chase failed to do that which it was obligated to do, these costs metamorphosed into damages.") (internal citations omitted).

PennyMac's motion to dismiss Plaintiff's RESPA claim (Count 5) is denied.

E.      **FDCPA Claim (Count 6)**

Plaintiff alleges that PennyMac violated the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692, et seq., by sending him monthly mortgage statements after he had

purportedly rescinded the mortgage loan. (Am. Compl. at 14.) PennyMac argues that the claim

should be dismissed because PennyMac is not a debt collector. (PennyMac & MERS Mot. to

Dismiss at 12–13 [ECF No. 24].) Quoting the Sixth Circuit, PennyMac notes: "'For an entity that

did not originate the debt in question but acquired it and attempts to collect on it, that entity is

either a creditor or debt collector depending on the default status of the debt at the time it was

acquired.'" (*Id.* at 13 (quoting *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir.

2012)).) Because the debt here was not in default at the time that PennyMac acquired it,

PennyMac asserts that it is not a debt collector. (*Id.*) PennyMac's argument misses the mark. It

overlooks a critical portion of the FDCPA's definition of "debt collector."

 Under the FDCPA, a "debt collector" is

> any person who uses any instrumentality of interstate commerce or the mails in
> any business the principal purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or indirectly, debts owed or due
> or asserted to be owed or due another. *Notwithstanding the exclusion provided by
> clause (F) of the last sentence of this paragraph, the term includes any creditor
> who, in the process of collecting his own debts, uses any name other than his own
> which would indicate that a third person is collecting or attempting to collect
> such debts*. . . . The term does not include—
>
> . . . .
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted
> to be owed or due another to the extent such activity (i) is incidental to a bona fide
> fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which
> was originated by such person; (iii) concerns a debt which was not in default at
> the time it was obtained by such person; or (iv) concerns a debt obtained by such
> person as a secured party in a commercial credit transaction involving the
> creditor.

18

15 U.S.C. § 1692a(6) (emphasis added); *see also Bridge*, 681 F.3d 360 (acknowledging that the definition of "debt collector" includes a carve out that applies notwithstanding clause F). That is, even if PennyMac is attempting to collect a debt owed to another that was not in default at the time PennyMac obtained it, PennyMac would still be a debt collector if, in the process of collecting its own debt, it used any name other than its own to indicate that a third party was collecting or attempting to collect the debt. *See id.* And here, Plaintiff alleges that PennyMac owned and serviced Plaintiff's mortgage loan, attempted to collect payment on that loan, and, in the process of collecting payments on that loan, referred to Ginnie Mae as the "owner/investor" of the loan—indicating that Ginnie Mae may be collecting or attempting to collect payments on the loan. (*See* Am. Compl. ¶¶ 52–54, 65, 117–27 [ECF No. 22].) Plaintiff has pleaded facts from which the Court can plausibly conclude that PennyMac was a debt collector.

PennyMac also contends that Plaintiff insufficiently pleaded its FDCPA claim when it stated: "PennyMac was and is subject to the FDCPA at all times relevant to this transaction." (PennyMac & MERS Mot. to Dismiss at 12.) PennyMac provides no further elaboration of this argument, though. And PennyMac makes no effort to connect this alleged pleading insufficiency to a specific element of an FDCPA claim that Plaintiff has purportedly neglected to plead. Viewing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff has pleaded a plausible FDCPA claim. (*See generally* Am. Compl.) PennyMac's motion to dismiss Count 6 is denied.

**F.    CSPA Claim (Count 7)**

PennyMac and Ginnie Mae move to dismiss Plaintiff's CSPA claim (Count 7). The Ohio Consumer Sales Practices Act ("CSPA"), codified in Ohio Revised Code Chapter 1345, "prohibits unfair or deceptive and unconscionable acts or practices by suppliers in [connection

with] consumer transactions. The act is intended to be remedial and should be construed liberally in favor of consumers." *Swoger v. Hogue*, 5th Dist. Tuscarawas No. 2013 AP 011 0045, 2015-Ohio-506, ¶ 36.

Under the CSPA, a "consumer transaction" is any "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household or solicitation to supply any of these things." O.R.C. § 1345.01(A). And a "supplier" is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." *Id.* § 1345.01(C). "If the consumer transaction is in connection with a residential mortgage, 'supplier' does not include an assignee or purchaser of the loan for value, except as otherwise provided in section 1345.091 of the Revised Code." *Id.* Section 1345.091, in turn, provides that a consumer may not bring a claim under the CSPA "against an assignee or purchaser of a mortgage loan for value unless . . . (A) [t]he violation was committed by the assignee or purchaser[] [or] (B) [t]he assignee or purchaser is affiliated by common control with the seller of the loan at the time of such assignment or purchase." *Id.* § 1345.091.

The Court will first address PennyMac's arguments for dismissal. It will then consider Ginnie Mae's. PennyMac contends that Plaintiff has "fail[ed] to specifically identify any facts in support of his claim." (PennyMac & MERS Mot. to Dismiss at 14 [ECF No. 24].) The Court disagrees. As explained above, Plaintiff has alleged sufficient facts to state a plausible TILA claim. (*See* Am. Compl. ¶¶ 83–86, 103–107 [ECF No. 22].) Those facts, incorporated into Plaintiff's CSPA claim, (*id.* ¶ 128), are sufficient to plausibly state a claim under the CSPA. *Cf. Cook v. Newman Motor Sales*, 6th Dist. Erie No. E-09-028, 2010-Ohio-2000, ¶ 10 (affirming the

trial court's decision where the trial court "concluded that in addition to independent violations of the CSPA, the violations of the MVTL and TILA were also violations of the CSPA"); *Linetsky v. DeJohn*, 8th Dist. Cuyahoga No. 94625, 2010-Ohio-5016, ¶ 13 (finding that a defendant, in violating TILA, "also violated R.C. 1345.02(F)(1), the CSPA"); *Howard v. Norman's Auto Sales*, 10th Dist. Franklin No. 02AP-1001, 2003-Ohio-2834, ¶ 8 (affirming the trial court's decision where the trial court "found that defendants committed an unfair, deceptive or unconscionable act in violation of R.C. 1345.02 and 1345.03, the [CSPA], and that defendants violated [15 U.S.C. § 1640], the [TILA], by failing to disclose a finance fee of $129").

PennyMac also contends that it is not subject to the CSPA because (i) it is not a "supplier" and (ii) its actions were not in connection with a "consumer transaction." (PennyMac & MERS Mot. to Dismiss at 14–15.) PennyMac's arguments fall flat. Plaintiff has plausibly alleged that PennyMac is a supplier acting in connection with a consumer transaction. (*See* Am. Compl. ¶¶ 36–54.) Plaintiff alleges that a consumer transaction occurred when he refinanced his residential mortgage loan with Mortgage Services III (a nonbank mortgage lender). (*See* Am. Compl. at 6 [ECF No. 22].) And Plaintiff plausibly alleges that PennyMac effected a consumer transaction when it purchased Plaintiff's mortgage loan from Mortgage Services III. *See* O.R.C. § 1345.01(C) (defining "[s]upplier" as a "person engaged in the business of effecting . . . consumer transactions, whether or not the person deals directly with the consumer"); *see also Anderson v. Barclay's Capital Real Estate, Inc.*, 136 Ohio St. 3d 31, 2013-Ohio-1933, 989 N.E.2d 997, ¶ 30 (defining "effect" as "'[t]o bring about; to make happen'" (quoting *Black's Law Dictionary* 592 (9th ed. 2009))). Moreover, the CSPA specifically provides for claims against "an assignee or purchaser of a mortgage loan for value" when "(A) [t]he violation was committed by the assignee or purchaser." O.R.C. § 1345.091; *see also id.* § 1345.01(C) (stating

21

that the term "'supplier' does not include an assignee or purchaser of the loan for value, except as provided in [O.R.C. §] 1345.091"). And here, Plaintiff has alleged that PennyMac purchased his mortgage loan from Mortgage Services III and that PennyMac committed the CSPA violation. (*See* Am. Compl. ¶¶ 52–54, 128–38.)

PennyMac cites *Ferron v. Zoomego, Inc.*, 276 F. App'x 473, 475–76 (6th Cir. 2008) for the proposition that a plaintiff's failure to allege that the transaction at issue is a "consumer transaction" requires dismissal for failure to state a claim. (PennyMac & MERS Mot. to Dismiss at 14.) *Ferron* is distinguishable, however. In that case, the Sixth Circuit determined that the plaintiff failed to allege sufficient facts to support the assertion that the email solicitations in question were consumer transactions. *Id.* ("[W]e can find no direct or inferential allegation in his Complaint that any email solicitations to supply an award by chance were for primarily personal, family, or household purposes."). Here, Plaintiff has plausibly alleged that PennyMac engaged in an unfair, deceptive, or unconscionable act in connection with a consumer transaction when PennyMac obtained from Mortgage Services III a mortgage loan secured by Plaintiff's primary residence and committed purported TILA violations. (*See* Am. Compl. ¶¶ 36–77, 83–86, 103–07, 128–38; *see also* O.R.C. §§ 1345.02(A) and 1345.03(A).)

PennyMac also cites *Anderson v. Barclay's Capital Real Estate, Inc.*, 2013-Ohio-1933, ¶¶ 11–32. In that case, the Ohio Supreme Court determined that a mortgage servicer is not a "supplier" under the CSPA. *Id.* ¶ 32. *Anderson* is not dispositive here, though. Plaintiff alleges that PennyMac serviced his mortgage loan. (Am. Compl. ¶ 53.) But Plaintiff also alleges that PennyMac purchased his mortgage loan. (*Id.* ¶ 54.) And as noted earlier, the CSPA specifically provides for claims against mortgage loan assignees and purchasers where, as here, the CSPA violation was allegedly committed by the assignee or purchaser. *See* O.R.C. § 1345.091.

In sum, PennyMac's motion to dismiss Plaintiff's CSPA claim (Count 7) is denied. The Court now moves to Ginnie Mae's motion to dismiss.

Ginnie Mae avers that its enabling statute, 12 U.S.C. § 1721, preempts the CSPA. Under § 1721(g)(1),

> [t]he Association is hereby empowered, in connection with any guaranty under this subsection, whether before or after any default, to provide by contract with the issuer for the extinguishment, upon default by the issuer, of any redemption, equitable, legal, or other right, title, or interest of the issuer in any mortgage or mortgages constituting the trust or pool against which the guaranteed securities are issued; and with respect to any issue of guaranteed securities, in the event of default and pursuant otherwise to the terms of the contract, the mortgages that constitute such trust or pool shall become the absolute property of the Association subject only to the unsatisfied rights of the holders of the securities based on and backed by such trust or pool. *No State or local law, and no Federal law* (except Federal law enacted expressly in limitation of this subsection after October 8, 1980), *shall preclude or limit the exercise by the Association of (A) its power to contract with the issuer on the terms stated in the preceding sentence, (B) its rights to enforce any such contract with the issuer, or (C) its ownership rights, as provided in the preceding sentence, in the mortgages constituting the trust or pool against which the guaranteed securities are issued.*

12 U.S.C. § 1721(g)(1) (emphasis added). If successful in his CSPA claim, Plaintiff could rescind his mortgage loan. O.R.C. § 1345.09(C)(2). That rescission would conflict with § 1721(g)(1), as it would limit Ginnie Mae's ownership rights over a mortgage in a trust or pool against which Ginnie Mae's guaranteed securities are issued.[2] If successful in his CSPA claim, Plaintiff could, alternatively, recover "three times the amount of [his] actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages." *Id.* § 1345.09(B). These damages could limit Ginnie Mae's ownership rights, as well as Ginnie Mae's power to contract with mortgage lenders.

Plaintiff contends that § 1721(g)(1) is inapplicable here because the section "is only applicable in the event of a default under the Guaranty Agreement with [Ginnie Mae], and . . .

---

[2] This assumes, as Plaintiff alternatively pleads in his Amended Complaint, that Ginnie Mae owns Plaintiff's mortgage loan. (*See* Am. Compl. ¶ 88 [ECF No. 22].)

23

there has been no default" here. (Mem. in Opp'n to Ginnie Mae Mot. at 10 [ECF No. 42].) But Plaintiff's reading of § 1721(g)(1) is inaccurate. Plaintiff overlooks language indicating that Ginnie Mae is empowered to contract with issuers "whether before or after any default." § 1721(g)(1).

"[T]he Supremacy Clause invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (internal citation omitted) (quoting *Gibbons v. Ogden*, 9 Wheat 1, 211 (1824)). And "when acting within its constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms." *Id.* at 713. This Court has not previously considered the scope of § 1721(g)(1)'s preclusive effect. Here, however, the conflict between § 1721(g)(1) and the CSPA is straightforward. If Plaintiff rescinds his mortgage loan under O.R.C. § 1345.09(C)(2), Ginnie Mae's ownership rights over that mortgage would be limited. And although the limitation is less severe with respect to damages under the CSPA, a damage award could chill Ginnie Mae's ownership rights and ability to contract with mortgage issuers. That is, the prospect of facing damages for CSPA violations relating to individual mortgages in the pool of mortgages that back the Ginnie Mae-guaranteed securities would likely limit Ginnie Mae's ability, and willingness, to contract with mortgage lenders and take ownership of mortgage loans in the event of a default.

Although not dispositive of § 1721(g)(1)'s preemptive effect as to the CSPA, the Court notes that other district courts to interpret § 1721(g)(1) have held that it preempts state laws that impose less of a burden on Ginnie Mae's contractual and ownership rights than the CSPA. *See Pipkin v. Mortg. Creditcorp, Inc.*, 72 F.3d 138 (Table), 1995 WL 747437, at *2–3 (10th Dist. Dec. 18, 1995) (finding preemption of a Texas law requiring Ginnie Mae to record its interest in mortgages); *United States v. NBD Bank, N.A.*, 922 F. Supp. 1235, 1247–48 (E.D. Mich. 1996)

(finding preemption of Michigan law requiring a customer to provide notice before bringing suit against a bank).

The Court, in sum, concludes that the CSPA, as applied to Ginnie Mae in this case, is preempted by § 1721(g)(1). As such, the Court grants Ginnie Mae's motion to dismiss Count 7.

## G.    Quiet Title Claim (Count 8)

Plaintiff brings a quiet title claim (Count 8) under O.R.C. § 5303.01. Under that section, "[a]n action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest." O.R.C. § 5303.01.

PennyMac and MERS challenge the merits of Plaintiff's claim, stating: "Plaintiff cannot show Defendants do not have a claim to the Property. A valid mortgage lien exists and Plaintiff's attempt to rescind the Loan is time-barred." (PennyMac & MERS Mot. to Dismiss at 15 [ECF No. 24].) But, as addressed earlier, Plaintiff has alleged a plausible TILA rescission claim (Count 3). And irrespective of whether PennyMac and MERS ultimately succeed on the quiet title claim, Plaintiff has plausibly alleged such a claim against them. (*See* Am. Compl. ¶¶ 139–46.) Accordingly, PennyMac and MERS' motion to dismiss Plaintiff's quiet title claim (Count 8) is denied.

Ginnie Mae also seeks dismissal of Plaintiff's quiet title claim. Ginnie Mae points to a decision from the Northern District of Ohio in which that court noted: "Ohio courts . . . have consistently determined that when a borrower voluntarily signs a mortgage, that mortgage cannot be removed or extinguished through a quiet title action, even if the mortgage holder's later attempts to assign the mortgage are defective. A mortgage is not an adverse interest nor a cloud on the title to the property" *Zordich v. Christiana Bank & Trust*, No. 4:15CV1134, 2015 WL

9583028, at *4 (N.D. Ohio Dec. 31, 2015) (internal citations omitted). Ginnie Mae reads this language as a uniform bar to all quiet title actions where the borrower voluntarily signed the mortgage. (*See* Ginnie Mae Mot. to Dismiss at 12 [ECF No. 32].) Although understandable, this interpretation is inaccurate. Ohio courts do frequently dismiss quiet title actions when a borrower voluntarily signs a mortgage. But they typically do so because the borrower has no basis for challenging the validity or enforceability of the underlying mortgage. *See, e.g.*, *Bank of N.Y. Mellon v. Morgan*, 2d Dist. Montgomery No. 25664, 2013-Ohio-4393, ¶ 47 ("Upon review of the parties' evidence, we find no genuine issue of material fact as to whether BNYM was the holder of the note."); *Cline v. Mortg. Elec. Registration Sys., Inc.*, 10th Dist. Franklin No. 13AP-240, 2013-Ohio-5706, ¶¶ 11–15 ("Though certain contractual agreements may or may not exist between the two entities at issue here, appellant does not allege how this has any impact on her obligations under the contract into which she entered so as to be entitled to quiet title under R.C. 5303.01.").

When interpreting O.R.C. § 5303.01, this Court has, likewise, considered the validity of a plaintiff's challenge to the underlying mortgage. *See, e.g.*, *Starkey v. JP Morgan Chase Bank, N.A.*, No. 1:13-cv-694, 2013 WL 6669268, at *6–7 (S.D. Ohio Dec. 18, 2013) ("This response does not suggest in any way that the 2004 mortgage and note, which Plaintiffs admit they sought and freely executed is legally invalid. Chase also notes that Plaintiffs are not entitled to discharge of that mortgage simply because Plaintiffs believed that Chase's 2012 letter applied to that mortgage." (internal citation omitted)). Given that Plaintiff has asserted a plausible claim for rescission under TILA, Plaintiff's quiet title claim is also plausible. As such, the Court denies Ginnie Mae's motion to dismiss Count 8.

**H.      Declaratory Judgment Claim (Count 9)**

Plaintiff's final claim is for declaratory judgment (Count 9) under O.R.C. § 2721.03 and

28 U.S.C. § 2201(a). Under § 2721.03,

> any person interested under a deed, will, written contract, or other writing
> constituting a contract or any person whose rights, status, or other legal relations
> are affected by a constitutional provision, statute, rule as defined in section 119.01
> of the Revised Code, municipal ordinance, township resolution, contract, or
> franchise may have determined any question of construction or validity arising
> under the instrument, constitutional provision, statute, rule, ordinance, resolution,
> contract, or franchise and obtain a declaration of rights, status, or other legal
> relations under it.

O.R.C. § 2721.03. Section 2201(a), in turn, provides that

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United
> States, upon the filing of an appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such declaration, whether or not
> further relief is or could be sought.

28 U.S.C. § 2201(a).

PennyMac moves for dismissal of the declaratory judgment claim on the assumption that

Plaintiff cannot bring his rescission claim. (*See* PennyMac & MERS Mot. to Dismiss at 15–16.)

But again, the Court has already determined that Plaintiff has alleged a plausible TILA rescission

claim (Count 3). The Court, therefore, denies PennyMac's motion to dismiss Count 9.

Ginnie Mae seeks dismissal of the declaratory judgment claim as well. Ginnie Mae

moves to dismiss this claim under both Federal Rule 12(b)(1)—for lack of subject-matter

jurisdiction—and under Rule 12(b)(6)—for failure to state a claim. (*See* Ginnie Mae Mot. to

Dismiss at 13–15 [ECF No. 32].)

According to Ginnie Mae, the Court lacks subject-matter jurisdiction over Plaintiff's

declaratory judgment claim because the claim does not involve "a justiciable case or

controversy." (Ginnie Mae Reply Br. at 8 [ECF No. 45].) This argument is easily dispatched,

though. Plaintiff has alleged a plausible TILA rescission claim, which could, if meritorious, alter the parties' legal rights and relations. And the Court could, in that situation, clarify the parties' new rights and relations through a declaratory judgment.

As to its 12(b)(6) argument, Ginnie Mae contends that under its Guaranty Agreement (which Ginnie Mae enters into with issuers of mortgage-backed securities), it owns "'all the right, title, and interest'" in Plaintiff's mortgage note. (Ginnie Mae Mot. to Dismiss at 14.) But the Court cannot consider Ginnie Mae's Guaranty Agreement in a motion to dismiss. The Guaranty Agreement is neither included in nor referenced in the Amended Complaint. (*See generally* Am. Compl. [ECF No. 22].) And even if the Court were to consider the Guaranty Agreement, the document would simply create a factual dispute that the Court could not consider on a motion to dismiss. *See Grindstaff*, 133 F.3d at 421.

The declaratory judgment claim also fails, Ginnie Mae argues, because the exhibits attached to the Amended Complaint "indicate that Ginnie Mae is the owner of Plaintiff's loan." (Ginnie Mae Mot. to Dismiss at 14–15.) This argument lacks merit. Plaintiff highlights in his Amended Complaint the exhibits that Ginnie Mae references. He alleges that those exhibits contain misrepresentations when they refer to Ginnie Mae as the owner or investor of his mortgage loan. (*See* Am. Compl. ¶¶ 65–66, 69–70, 105.) Although Plaintiff may ultimately fail to prove his allegations, the Court accepts them as true when considering a motion to dismiss. *See Grindstaff*, 133 F.3d at 421. Ginnie Mae's motion to dismiss Count 9 is denied.

28

### III.

For the foregoing reasons, Defendants' motions to dismiss [ECF Nos. 24, 32] are

**GRANTED IN PART** and **DENIED IN PART**. Count 7 is **DISMISSED** as to Ginnie Mae and

Count 2 is **DISMISSED** as to PennyMac.

**IT IS SO ORDERED.**

9-30-2016
_____
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**